[S. F. No. 4780. In Bank.—December 5, 1907.]

## W. L. HOPPER et al., Appellants, v. J. A. KEYS et al., Respondents.

CHATTEL MORTGAGE — REMOVAL OF PROPERTY TO ANOTHER COUNTY—
FAILURE TO RECORD—LOSS OF LIEN AS TO CREDITORS.—Under section
2965 of the Civil Code, where personal property situated and mort-
gaged in one county, where the mortgage is properly recorded, is
afterwards removed to another county by the mortgagor, the
failure of the mortgagee to record the mortgage in the county to
which the mortgaged property has been removed within thirty days
after such removal, has the effect *ipso facto* of exempting the
mortgaged property for all time and wherever afterwards situated
from the operation of the mortgage in so far as it concerns cred-
itors of the mortgagor, unless the mortgagee within that time takes
possession of the property. And the recordation of the mortgage
after the time prescribed by the statute, in the county in which the
property is then situated, does not have the effect of reviving
the mortgage so as to render it operative against the creditors of
the mortgagor. These results follow, although the property was
surreptitiously removed by the mortgagor, and although the cred-
itors had actual knowledge of the existence of the mortgage and its
recordation.

ID—STATUTORY REQUIREMENTS MUST BE OBSERVED.—The authority for
the creation of chattel mortgages in this state derives its force from
the statutory provisions relating to the subject, and all rights
accruing by virtue of such mortgages can be protected and pre-
served only by fully meeting the requirements of the statute and
strictly observing its provisions.

APPEAL from a judgment of the Superior Court of
Sonoma County. A. G. Burnett, Judge.

The facts are stated in the opinion of the court.

J. R. Leppo, and J. A. Barham, for Appellants.

T. J. Butts, for Respondents.

THE COURT.—This case was originally before the district
court of appeal for the third appellate district, and a rehear-
ing ordered by this court after decision rendered there. The
opinion of said district court stating the facts and applying
the law is as follows:—

"This is an action to recover the value of certain personal property, alleged to have been wrongfully converted by the defendants. Judgment went for the defendants, and this appeal is from the judgment upon the judgment-roll alone.

"According to the facts, as exhibited by the findings, and upon which to a large extent the parties agreed in the lower court, one George W. Emerick, who was, at the time of the original transaction out of which this controversy arises, a resident of Napa County, made, on the 21st day of July, 1902, his promissory note, bearing date of June 16, 1902, in the sum of six hundred dollars in favor of and payable to W. L. Hopper, one of the plaintiffs herein, and T. A. Light, intestate of plaintiff, C. A. Stevens, and on the same day executed and delivered to them a chattel mortgage upon certain personal property to secure the payment thereof. The property upon which the mortgage was executed consisted of one Champion Giant hay press, one Lightning platform scales and one Buck rake, and was at the time of the execution of the note and mortgage situated in Napa County. The mortgage was in due form and was recorded in the office of the recorder of Napa County on the 25th day of July, 1902. In the month of August, 1902, Emerick removed the mortgaged property to Sonoma County, where it remained in his possession and was kept by him until the month of May, 1903—covering approximately a period of nine months. The plaintiffs, during all this time the owners and holders of the note and mortgage, did not cause the mortgage to be recorded in Sonoma County at any time and did not take possession of the mortgaged property after its removal thereto. The plaintiff Hopper was at this time a resident of the city of Santa Rosa, in Sonoma County, and the court below found that said Hopper, within two or three weeks after the mortgaged property had been removed from Napa to Sonoma County, knew and had knowledge of such removal of the property into Sonoma County. In fact, Emerick used the hay press for baling purposes in Sonoma County, in the vicinity of Santa Rosa, for several weeks in the month of October, 1902, and on one occasion, in the month of April, 1903, removed the press to a blacksmith shop in Santa Rosa, situated directly opposite the livery stable of the plaintiff Hopper. Previous to this occasion the property had been stored in a barn of a

brother-in-law of Hopper's, about two miles west of Santa
Rosa. In the month of May, 1903, Emerick removed the hay
press and scales to Solano County. The defendant Souther-
land had instituted an action in the justice court of Santa
Rosa township, Sonoma County, against said Emerick and
one Miller to recover upon an indebtedness claimed to be due
from said defendants in said action to Southerland, which
said indebtedness, it is admitted, was 'incurred, created and
existing prior to the date of the execution in Napa County
of the note and chattel mortgage' involved in the case at bar.
The court below found that at the time he recorded the mort-
gage in Solano County 'plaintiff Hopper had knowledge of
and knew that the defendant R. G. Southerland had com-
menced the action in the justice court of Santa Rosa town-
ship, Sonoma County, and had made an ineffectual attempt to
attach the said property.' The defendant James A. Keys
was, at the time of which we are now speaking, sheriff of
Solano County. On the 22d day of July, 1903, said defend-
ant Keys, in his capacity as sheriff, levied upon, seized and
took and carried away a portion of said mortgaged property—
the hay press and platform scales—then in the possession of
said Emerick in Solano County, by virtue of a writ of attach-
ment placed in his hands by said R. G. Southerland for ser-
vice, issued in the action then pending in the justice court
of Santa Rosa township, Sonoma County, in which, as here-
tofore explained, Southerland, one of the defendants here,
was plaintiff and Emerick and Ed. Miller were defendants.
The attachment thus executed by defendant Keys appears
to have been irregularly issued by the justice court, because
of some fatal defect in the undertaking, and upon the applica-
tion of defendant Emerick in that action, the writ was dis-
charged and the property released by the sheriff. It should
be stated that on the 21st day of July, 1903, and, as admitted
by the plaintiffs herein, more than thirty days after the
removal of said property to Solano County, plaintiffs caused
their mortgage to be recorded in the office of the recorder of
Solano County. When the sheriff seized the property under
the authority of the aforesaid writ of attachment, the plain-
tiffs herein served upon that officer written notice of the
existence and recordation in Solano and Napa counties of their
said mortgage, and made a demand upon said sheriff that he

pay to said Hopper and Light the amount of the mortgage debt due them. This fact is stated here for the purpose of showing that at that time the defendants were given and had actual notice of the recordation of the mortgage in both Solano and Napa counties. Defendant Southerland, on the 17th day of October, 1903, as plaintiff in the aforesaid justice court action, obtained judgment for the sum of $314.45, and, after causing an abstract of his judgment thus obtained to be filed in the office of the county clerk of Sonoma County, and the same docketed in the judgment docket of the superior court of that county, he caused, on the 6th day of November, 1903, to be issued out of said superior court an execution, which he placed in the hands of defendant Keys, as sheriff, and thereupon directed him, as such officer of Solano County, to seize and levy upon said mortgaged property, still situated in that county, and to sell the same on execution to satisfy his judgment so obtained in the justice court of Sonoma County, as aforesaid. The hay press and scales, a portion of the property in controversy, were thereupon by said defendant Keys, in his capacity as sheriff, levied upon and taken by virtue of said execution, and on the 19th day of November, 1903, sold by him, under the authority thus vested in him, to the defendant Southerland, who, in payment therefor, canceled and satisfied his said judgment against the said defendants Emerick and Miller.

"The facts thus detailed, and concerning which, as we have stated, there is no dispute between the parties, present for solution, we think, the single question of the effect of a failure to record a chattel mortgage within the time prescribed by law in a county to which the mortgaged property has been removed from that in which the property was situated and the mortgage recorded at the time of the execution of the instrument. In other words, it may be inquired, does such failure to record the mortgage in the county to which the mortgaged property has been removed have the effect of exempting the mortgaged property for all time from the operation of the mortgage, in so far as it concerns creditors of the mortgagor? This question may, we think, be determined with little difficulty, by an examination of the sections of the code relative to chattel mortgages and their bearing upon the particular point presented by the facts in this case.

"Section 2957 of the Civil Code reads: 'A mortgage of personal property is void as against creditors of the mortgagor and subsequent purchasers and encumbrancers of the property in good faith and for value, unless:

" '1. It is accompanied by the affidavit of all the parties thereto that it is made in good faith and without any design to hinder, delay, or defraud creditors;

" '2. It is acknowledged or proved, certified and recorded, in like manner as grants of real property.'

"Section 2965, *supra,* provides: 'When personal property mortgaged is thereafter by the mortgagor removed from the county in which it is situated, it is, except as between the parties to the mortgage, exempted from the operation thereof, unless either:

" '1. The mortgagee, within thirty days after such removal, causes the mortgage to be recorded in the county to which the property has been removed; or,

" '2. The mortgagee, within thirty days after such removal, takes possession of the property, as prescribed in the next section.'

"The 'next' section points out that the property may be taken by the mortgagee and disposed of as a pledge for the payment of a debt, 'though the debt is not due.' It will, however, be observed that under the provisions of section 2957, *supra,* one of the requisites of a chattel mortgage, and without which it would be void as against creditors of the mortgagor and subsequent purchasers and encumbrancers of the property in good faith and for value, is that it shall be recorded.

"At common law and under our own early statutes, delivery to and possession by the mortgagee of the mortgaged chattel were required. 'There is thus no room left for doubt but that the law of 1850 rendered void, at the instance of creditors, a chattel mortgage, unless it was accompanied by an immediate delivery and by an actual and continued change of possession of the property affected.' (*Ruggles* v. *Cannedy,* 127 Cal. 295, [53 Pac. 911, 59 Pac. 827].) After referring to several of our code provisions, changing the law of chattel mortgages as it existed in the early history of our jurisprudence, and quoting section 2957 of the Civil Code, the supreme court in the case cited says: 'Thus, in the case of the articles

of personal property enumerated in section 2955 of the code, recordation became a substitute for delivery and change of possession.  The recording of the mortgage is, therefore, made by the code the equivalent of an immediate delivery and continued change of possession.'  (Citing *Berson* v. *Nunan,* 63 Cal. 550, and *Martin* v. *Thompson,* 63 Cal. 3.)

"But it is urged by appellants that the time within which the mortgage must be recorded after its execution is not material; that creditors of the mortgagor whose claims accrued prior to the execution of the mortgage and who have actual knowledge or notice of its existence and proper certification cannot question the validity of the mortgage upon the ground of its non-recordation.  And to support this view we are referred to the opinion of some of the justices in the case of *Ruggles* v. *Cannedy,* 127 Cal. 295, [53 Pac. 911, 59 Pac. 827], and the case of *Summerville* v. *Kelliher,* 144 Cal. 157, [77 Pac. 889].  These cases have no application to the question here.  They deal entirely with section 2957 of the Civil Code, which contains no express provision fixing a time within which the mortgage shall be recorded in the first instance—that is to say, in the county in which the mortgaged property was situated at the time of the execution of the mortgage.  And, it may here be stated, that in an elaborate and signally able opinion by Justice Henshaw in *Ruggles* v. *Cannedy,* 127 Cal. 295, [53 Pac. 911, 59 Pac. 827], it is held that the recordation of the mortgage, having been designed by the statute as a substitute for and equivalent of immediate delivery and continued change of possession under the former system in vogue in this state, should be had immediately, or as near thereafter as practicable, upon the execution of the mortgage, in order to give notice to and bind third parties.  It must be conceded that the authority for the creation of chattel mortgages in this state derives its force from the statutory provisions relating to the subject, and that all rights accruing by virtue of such mortgages can be protected and preserved only by fully meeting the requirements of the statute and strictly observing its provisions.  That the recordation of the mortgage, under our present system, is one of the necessary and indispensable requisites to protect the rights of the mortgagee against creditors of the mortgagor and subsequent purchasers and encumbrancers of the property in good faith and

for value, is a self-evident proposition. 'It must be remembered, in general, that the policy of the law is against secret liens and charges to the injury of innocent purchasers or encumbrancers for value, and in particular, that mortgages of personal property are permitted only in certain specified cases, and then only upon the observance of certain formalities, designed to insure good faith, and to *give notice to the world* of the character of the transaction.' (*Palmer* v. *Howard*, 72 Cal. 293, [1 Am. St. Rep. 60 and note, 13 Pac. 858].) What 'notice to the world' is must be and is committed to the legislative judgment. In some states, we have observed, the recordation of the mortgage in the county in which the mortgaged property was situated at the time of the execution of the instrument, was all that was required by the statutes of such states, and the courts have held that that was 'notice to all the world,' even though the mortgaged property be removed to another county. The legislatures of those states, having so declared their judgment thereon is binding and conclusive upon the courts. In California, however, the legislature has gone farther, and has said that the recordation in the first instance is not sufficient if, after the execution and recordation of the mortgage in the county where the property was situated at the time, the mortgaged property be removed from that county. The mortgagee, in the event of the removal of the property out of the county where the mortgage is properly recorded, to protect his rights under the mortgage, may, under the law, proceed in either one of two ways. He may, within thirty days after the removal of the mortgaged property into another county, take possession of the property and dispose of it as a pledge, or he may, within the same limit of time, cause the mortgage to be recorded in the county to which it has been removed. These are his remedies, under the circumstances mentioned, expressly pointed out to him by the statute. According to the evidence the plaintiffs availed themselves of neither. Did they, therefore, forever forfeit their lien upon the property, so far as it affected the rights of the creditors of the mortgagor? We think the code sections bearing upon the point and to which we have referred are susceptible of no other construction than that the recordation of the lien, within the time prescribed, in the 'county to which the property has been removed,' is indispensably

necessary to preserve the rights of the mortgagees against
creditors, unless possession is taken of the property by the
mortgagees as provided by section 2965. In fact, the lan-
guage of section 2965 of the code is so plain and unambiguous
that construction is unnecessary. The failure of the appel-
lants to do either of the things in Sonoma County required by
that section had the effect, in our opinion, of exempting *ipso
facto*, the property from the operation of the mortgage, so
far as it affected creditors of the mortgagor. The recordation
of the mortgage after the time prescribed by the statute could
not have the effect of reviving the mortgage so as to render
it operative against the creditors of the mortgagor, because
there is no provision in the statute which provides that any
such power rests in such act of recordation. We can neither
add to nor take from, by construction, any force which a
statute possesses, and therefore if we were to accept the
contention of appellants we would be compelled, in defiance
of the power to which courts are thus limited, and in direct
violation of an express rule of construction (Code Civ. Proc.,
sec. 1858), to either eliminate and totally disregard the time
limit clause contained in section 2965 of the Civil Code, or,
in the language of counsel for respondents, read into the
section the words, 'so long as the mortgage remains unre-
corded.' Counsel for appellants admit that 'if the property
had been attached in Sonoma County thirty days after the
same had been removed thereto the lien of the attachment
would have been good, because the mortgage was not recorded
there at all.' We think, with counsel for respondents, that
this concession is a complete surrender of their case. But,
they insist that the property, having been removed to Solano
County and the mortgage recorded therein before any process
lien was executed upon it, the lien thereunder was thus re-
vived and again became operative as against the world. There
is, as we have said, no warrant for any such construction of
the statute. The fact of the removal of the property into
Solano County cannot in any conceivable view affect the
question. If the legislature does not mean what it plainly
says as to the time limit prescribed in section 2965, *supra,*
what can it mean? Must it be presumed that the law-
makers employed that language idly and without purpose?
The reason upon which rests our whole system of chattel

mortgages, as it now exists and was established by our legis-
lature in lieu of the former system in this state, satisfactorily
and conclusively answers the question. The law is designed
to protect the rights of all classes. It plainly and clearly
points the way to the mortgagee for the protection of his
rights. But he is by the law chargeable with vigilance, and
will not be permitted to sleep upon his rights. He must
watch, follow and pursue the safe-guards accorded him by
the law. It is no answer to say that the mortgaged property
has been surreptitiously removed from the county by the
mortgagor. It is the duty of the mortgagee to guard against
such removal, and if he fails in this duty and thus forfeits
and loses his rights, is there any reason why he should be
restored thereto and favored as against others, who, having
equal claims and equal equities against the unencumbered
property of his mortgagor, take advantage of his neglect and
default to enforce their own rights? We know of no just
reason.

"We, therefore, conclude that the failure on the part of
the mortgagees to pursue either remedy afforded them by
the statute within the prescribed time in Sonoma County
was fatal and lost to them their lien and rights under the
mortgage, so far as the respondent Southerland, as a cred-
itor of the mortgagor, was concerned; that the recordation
in Solano County was nugatory and a futile act as to creditors
of the mortgagor, because, as we have shown, there is no
provision of the law which gives such force to such recordation
under the circumstances present in this case as would revive
or vitalize the mortgage as to creditors.

"But it is argued that section 3431 of the Civil Code affords
protection to the mortgagee as against the claims of creditors,
notwithstanding that the mortgage has not been recorded in
the county to which the property has been removed within the
time prescribed by the statute. That section reads: 'In the
absence of fraud, every contract of a debtor is valid against
all his creditors, existing or subsequent, who have not acquired
a lien on the property affected by such contract.' That sec-
tion can be of no assistance to appellants, for, if our position
as to the effect of failure to record the mortgage in the
county to which the mortgaged property has been taken is
correct, then, in such case, it must be perceived that the

mortgage, thus unrecorded, does not and cannot constitute a 'contract of a debtor (mortgagor) valid against all his creditors,' because such contract has, *ex necessitate,* ceased to *affect* the property involved in the mortgage. It is conceded, and indeed the statute clearly enough so provides, that as between the parties themselves the mortgage is valid, but, as we think we have shown, where there has been a failure to comply with any of the essential requirements of the statute to impart full validity to the mortgage, and of which recordation in the county to which the property has been removed is one, the mortgage then cannot be construed to be a contract valid against creditors, unless, by judicial interpretation and construction we legislate out of section 2965 of the Civil Code the clause prescribing the time within which the mortgage must be recorded in the county to which the property has been removed.

"The appellants seem to attach considerable significance to the fact that respondents had actual notice and knowledge of the existence and recordation of the mortgage in Napa and Solano counties at the time of the taking of the mortgaged property under the execution lien. But this question of actual notice by creditors of the mortgagor has been settled by the supreme court against the position of appellants in the case of *Cardenas* v. *Miller,* 108 Cal. 252, [49 Am. St. Rep. 84, 39 Pac. 783, 41 Pac. 472]. It is there held that our 'statute makes a very plain distinction between creditors and subsequent purchasers and mortgagees.' 'The latter,' says the court in that case, in denying a rehearing, 'are protected against the prior unrecorded mortgage only when they take their conveyances "in good faith and for value"; and, of course, they do not take them in good faith if they have actual notice of the prior mortgage. But not so as to *creditors.* As to them good faith is not made a condition, but such a mortgage is declared void without qualification. As to them the question of actual notice is made wholly immaterial under the statute, and, consequently, knowledge on their part of the existence of such unrecorded mortgage will not protect their claims. *The plain import of the statute is that nothing but a compliance with its terms will protect a mortgage of chattels against creditors.'* If a question of 'good faith' were involved in this discussion, it is suggested

that the admitted facts in this case are not such as to impress us that the conduct of the mortgagees in this transaction was characterized by any such quality. They undoubtedly knew the property had been removed to Sonoma County, and even if this knowledge was obtained after the time to which they were limited for the recordation of the mortgage or taking possession of the property, they had ample opportunity to make new arrangements with the mortgagor by the cancellation of the note and satisfaction of the mortgage executed in Napa County in consideration of a new note and mortgage in Sonoma County, where they could have recorded the new mortgage and thus probably have protected their rights. But they did not do this or make any effort to protect themselves until they had learned, according to the findings, of the proceedings of respondent Southerland against the mortgagor Emerick and of the 'ineffectual attempt' to attach the property.

"Of course, these observations have no bearing or influence upon the conclusions here reached by us, but, as we have said, if the question of 'good faith' could be injected into the discussion as a necessary element to determine upon which side the 'equities' are to be found, there would be little difficulty, under the admitted facts, in turning the scale on that score against appellants.

"The judgment will be affirmed.

                                        "HART, J.

"Chipman, P. J., and Burnett, J., concurred."

The rehearing granted by this court from the above decision was ordered mainly that the cause might be reconsidered in this court in connection with the case of *Hammels* v. *Sentous,* in which a rehearing had previously been granted from a decision of the district court of appeal for the second appellate district, where the question was also involved as to the effect of a failure to record a chattel mortgage within thirty days after the removal of the property to a county other than where originally situated and mortgaged. The Hammels case, while involving such effect, did not necessitate a consideration of the question to the extent presented by the case now under consideration (*Hammels* v. *Sentous,* 151 Cal. 520, [91 Pac. 327]), and to the extent that the question is

involved here, after full consideration of the matter, we are satisfied with the conclusion reached by the district court of appeal. This cause was not reargued, and no new points for consideration are urged now, which were not presented to and passed on by that court. We are satisfied that the opinion rendered, and which is here set forth *in extenso,* clearly and correctly states the law, and we adopt it as doing so.

Appellants, it is true, insist here in the petition for a rehearing that the district court of appeal did not consider the point urged by them, that no one could raise the question of the validity of the mortgage lien except one who had an attachment or execution lien on the property under a levy made prior to the recordation of the mortgage. In other words, to state the point concretely, it is insisted that as no lien was obtained by Southerland on the mortgaged property until after the mortgage was recorded in Solano County, such recordation defeated any attack he might make on the mortgage, notwithstanding such recordation was not had until more than thirty days had elapsed after the property had been removed to Solano County from Sonoma. As we read the decision, however, while it does not particularly discuss this point, it disposes of it adversely to appellants, and correctly does so. As the district court says, the failure of the mortgagee to record the mortgage in Solano County within thirty days after its removal there, *ipso facto,* exempted the property from the lien of the mortgagee, in favor of the creditors of the mortgagor. The exemption having attached, no subsequent recordation of the mortgage could relieve from it or restore the mortgage lien. The requirement that the mortgage, when the property is removed, shall be filed in the county to which such removal takes place, is for the protection of creditors and *bona fide* purchasers and encumbrancers, and not for the purpose of prolonging the lien as between the parties. Want of recordation was of no consequence as between the parties, because, independent of it, the lien as to them was good. As to the creditors, however, upon failure to record the mortgage within the time fixed by the statute, it became a dead lien, and no action of the mortgagee could revive it. The property once exempted from the lien continued to remain so, and was just as effectually exempt from it upon recordation after the expiration of the thirty days as it would

have been after such period had expired if no recordation had been had, and Southerland was entitled to attack the validity of the mortgage as soon as he levied an execution upon the property embraced in it, and was thereby placed in a position to do so, and the recordation in Solano County, made after the thirty days, was of no force against that attack.

The judgment is affirmed.