[L. A. No. 10484.   In Bank.—June 23, 1931.]

WASHINGTON LUMBER AND MILLWORK COMPANY (a Corporation), Appellant, v. GEORGE M. McGUIRE, Respondent.

Coleman E. Stewart for Appellant.

W. P. Butcher for Respondent.

LANGDON, J.—This is an appeal from a judgment of the superior court restoring possession of a truck and giving damages for its detention to the defendant herein on his cross-complaint. Plaintiff was originally the registered owner of the machine. Some time in 1925 it entered into a contract of conditional sale with G. H. Hubbard, who paid part of the purchase price and executed promissory notes for the balance. At this time, also, plaintiff indorsed and transferred the certificate of ownership to Hubbard, and the latter thereafter caused a new certificate to be issued, in his own name. Plaintiff later discovered its error, and attempted to correct it by communicating with the motor vehicle department. Before this could be done, however, Hubbard approached defendant, seeking a loan of some money, and defendant agreed to advance it with the truck as security. Nothing appears in the record to indicate that defendant knew of plaintiff's interest. But defendant refused to take a chattel mortgage. Instead he insisted that title be first transferred to him, following which he would give Hubbard back a conditional sale contract. This was done on July 3, 1926. Defendant took the indorsed certificate of ownership from Hubbard and registered it in his own name with the department and then executed the conditional sale contract for the same amount for which he had purported to buy the car. During the period of the negotiations the truck was in Hub-

bard's yard and it never left his possession, nor was his use of it interrupted in any respect.

Hubbard defaulted in his payments to plaintiff. The latter repossessed it by stealth; Hubbard retook it by force; and eventually, after considerable strife among the parties, defendant secured it, and plaintiff brought suit to recover it. Defendant cross-complained and the trial court gave judgment in his favor for possession of the truck or its value, set at $1,000, and for damages for its detention in the sum of $2,880.

The trial court apparently based its judgment on one of two theories: First, that plaintiff, by indorsing and transferring to Hubbard the certificate of ownership, clothed the latter with the *indicia of title*, and was consequently estopped to deny that title as against third parties who acted in reliance upon it; and second, that in accepting promissory notes for the balance of the purchase price, plaintiff caused *actual title* to pass to the buyer.

The second theory may be readily disposed of. The evidence sufficiently shows that the notes were not accepted in lieu of cash payment; and the rule is well settled that the taking of a promissory note does not constitute payment of a debt so as to discharge it, unless the parties so agree at the time. (*Western Fuel Co. v. Sanford G. Lewald Co.,* 190 Cal. 25 [210 Pac. 419]; *Merchants Nat. Bank v. Bentel,* 166 Cal. 473 [137 Pac. 25]; *First Nat. Bank v. Corcoran,* 105 Cal. App. 116 [286 Pac. 1105].) Plaintiff did not, therefore, part with title to the car by accepting the notes.

The more important question relates to the effect of the indorsement and delivery of the certificate of ownership. Through this act plaintiff made it possible for Hubbard to deceive innocent parties by his apparent ownership, and plaintiff would normally be estopped to deny that it had intended to transfer title to Hubbard. The doctrine of estoppel in such cases is expressly stated in section 1142 of the Civil Code, and has been frequently applied in this and other states. (See *Rapp v. Fred W. Hauger Motors Co.,* 77 Cal. App. 417 [246 Pac. 1067]; *Democrat-Herald Pub. Co. v. Pettit,* 94 Cal. App. 724 [271 Pac. 910]; *Pacific Finance Corp. v. Hendley,* 103 Cal. App. 335 [284 Pac. 736]; 15 Cal. L. Rev. 505; Ballantine, Purchase for Value and Estoppel, 6 Minn. L. Rev. 87.) The court found

upon sufficient evidence that defendant had no knowledge of plaintiff's actual ownership under the original conditional sale contract, and this finding places defendant in the position of an innocent party. Hence Hubbard had the power to give a good title to the machine to defendant.

But the transaction between Hubbard and defendant had no such result. In the first place, it was clearly intended to secure the loan, and therefore, notwithstanding the apparent transfer of title, gave defendant at most a lien upon the property. (Cal. Civ. Code, sec. 2924; *Commercial Securities Corp.* v. *Lindsay Mercantile Co.*, 92 Cal. App. 91 [267 Pac. 766] ; *Bonestell* v. *Automotive Finance Corp.*, 69 Cal. App. 719 [232 Pac. 734] ; *Blodgett* v. *Rheinschild*, 56 Cal. App. 728 [206 Pac. 674] ; *Arena* v. *Bank of Italy*, 194 Cal. 195 [228 Pac. 441].) But it did not operate to transfer the title for another reason: it was a purported sale from Hubbard to defendant, unaccompanied by any actual change of possession as required by section 3440 of the Civil Code. Defendant testified: "I identified the truck by putting my hand on it." This is obviously not a compliance with the statute. There must be "an immediate delivery" followed by "an actual and continued change of possession". (Cal. Civ. Code, sec. 3440; see *Sequeira* v. *Collins*, 153 Cal. 426 [95 Pac. 876] ; *Pfunder* v. *Goodwin*, 83 Cal. App. 551 [257 Pac. 119].) Defendant, therefore, did not take title from Hubbard; the purported sale was intended only as security, and also was void as against creditors of the seller because of the failure to transfer possession. The title remained in plaintiff throughout all of the transactions.

To escape from the above conclusion, defendant advances another proposition of some importance, which we now proceed to consider. It is, briefly stated, that section 3440 of the Civil Code does not apply to the transfer of a motor vehicle, because the California Vehicle Act, passed subsequent to section 3440, provides an exclusive and complete means of transferring such property. This question has not as yet received the consideration of the courts of this state, although it was assumed in one case without discussion that the section did apply. (*Fletcher* v. *Commercial Discount Co.*, 103 Cal. App. 656 [284 Pac. 990].) The section is mentioned also in *Samuels* v. *Barnet*, 79 Cal. App. 529 [250 Pac. 405], but in that case there had been

no compliance with the terms of the California Vehicle Act. The problem is, therefore, to be solved upon a consideration of the content and purposes of the two statutes, although, as will appear, there are several cases dealing with analogous situations which indicate what the rule should be.

Defendant's contention is, in effect, that the provisions of section 3440, in so far as they apply to motor vehicles, were repealed by implication upon the enactment of section 45 of the California Vehicle Act. Section 3440 in terms covers "every transfer of personal property" with certain enumerated exceptions. It is a commonplace observation that repeals by implication are not favored and that there must be an irreconcilable conflict between two statutes before the later will be deemed to have repealed the earlier. (*Fay* v. *District Court of Appeal*, 200 Cal. 522 [254 Pac. 896]; 23 Cal. Jur. 694, sec. 84.) The two statutes which we are examining are not irreconcilable. Section 45 of the Vehicle Act, after stating the manner in which the certificate of ownership shall be indorsed and sent to the division of motor vehicles for registration, goes on to provide:

"(e) Until said division shall have issued said new certificate of registration and certificate of ownership as hereinbefore in subdivision (d) provided, delivery of such vehicle shall be deemed not to have been made and title thereto shall be deemed not to have been passed and said intended transfer shall be deemed to be incomplete and not to be valid or effective for any purpose."

The meaning of this language is quite plain: The formalities specified in the act cannot be disregarded, and no other formalities will operate to pass the title to a motor vehicle. But it does not follow that the formalities required by the act were intended to do away with all statutory requirements on sales of personal property generally. In other words, because these formalities are *essential* to the transfer of title is no ground for concluding that they are *exclusive* of all other restrictive provisions. To say, as the section does, that one requirement cannot be disregarded, is not at all the same as to say that all others may be.

An examination of the language of section 3440 leads to the same conclusion. That statute makes express exceptions to its terms, e. g., in the cases of choses in action and ships or cargoes at sea or in a foreign port, and where the person making

the transfer does not have possession or control of the property at the time. It has also been held that an exception is implied in the case of growing crops, which are, of course, physically incapable of manual delivery. (*Rosenberg Bros.* v. *Ross,* 6 Cal. App. 755 [93 Pac. 284].) Under these circumstances the fact that the legislature has made no express exception in the case of motor vehicles cannot be ignored; and, of course, there is nothing in the nature of a motor vehicle which would make change of possession impossible or difficult.

Still further support for this conclusion may be found in the provisions of the Civil Code and California Vehicle Act with respect to chattel mortgages. Section 2957 of the Civil Code provides in substance that a mortgage of personal property is void against creditors of the mortgagor and subsequent purchasers and encumbrancers in good faith and for value unless accompanied by an affidavit of good faith, and unless acknowledged and recorded; and section 2959 requires recordation in the county where the mortgagor resides, and in the county where the property is situated or to which it is removed. In *Ruggles* v. *Cannedy,* 127 Cal. 290 [46 L. R. A. 371, 53 Pac. 911], the court declared that the recordation required by these sections in the case of chattel mortgages was the equivalent of the change of possession required by section 3440 in the case of all other transfers either of title or lien. (See, also, *Hopper* v. *Keys,* 152 Cal. 488 [92 Pac. 1017].) The chattel mortgage sections have been recently applied to motor vehicles. (*Kahriman* v. *Fitzgerald,* 85 Cal. App. 180 [259 Pac. 90].) The legislature has, in fact, recognized this condition by a subsequent enactment. Instead of enacting, as it should have done if defendant's contention were correct, that a chattel mortgage of a motor vehicle could be made merely by indorsement, delivery and registration of the certificate of ownership, it provided that no chattel mortgage of a motor vehicle would be valid, except between the parties thereto, unless the mortgagee were registered with the division as the legal owner. (California Vehicle Act, sec. 45¼; Deering's Gen. Laws, 1929 Supp., p. 3441.) The meaning of this amendment, considered in connection with the Civil Code sections, is that registration with the division is *essential,* but is *not exclusive* of all other statutory requirements. It is still

necessary that the parties execute a proper chattel mortgage, with its affidavit of good faith; and that this mortgage be recorded in the county where the mortgagor resides and where the property is. These statutory protections to creditors and purchasers are not superseded but supplemented by the requirement of registration with the division. If this be true of a chattel mortgage, it must also be true of transactions covered by section 3440, for, as already pointed out, the theory of our legislation in this connection is that the change of possession required by section 3440 is the equivalent of recordation as required by the chattel mortgage sections. (*Ruggles* v. *Cannedy, supra;* see 17 Cal. L. Rev. 50.)

It must be concluded, therefore, that whatever reasons of policy or practical expediency might be advanced in favor of defendant's proposition, the legislature has given no indication of an intention to exclude the transfer of motor vehicles from the provisions of section 3440, and without such an indication, we must hold the section applicable to them.

█ The result is that defendant never gained title to the property and plaintiff never lost title to it. But a final question remains: Should the defendant lose all of his investment by reason of his failure to protect his security? He might, of course, have taken a chattel mortgage, which, if in proper form, recorded and accompanied by the registration of the certificate of ownership, would have given him a valid lien upon the property. He did not do this. But the record shows that he did do what he thought was the equivalent; he did register the transfer with the motor vehicle department. His conduct was in good faith throughout the transaction; there was no attempt by him to keep his interest secret; it was at all times ascertainable by inquiry at the department, and presumably, by inspection of the copy of the certificate required by law to be kept in the machine. His failure to record a chattel mortgage, or transfer possession of the property, would be a circumstance which would make his rights inferior to ordinary creditors of Hubbard. But is plaintiff in the same position as other creditors? To our minds there is a decided and material difference between its position and that of other innocent third parties. It was its original negligent act which permitted Hubbard to appear as the owner of the car, and which constituted the

inducement for defendant to lend money to Hubbard. That representation, relied upon by defendant to his subsequent damage, would seem to present a case of actionable deceit, which in this and many other states may be based upon negligent as well as wilful misrepresentation. (See Civ. Code, sec. 1710; 12 Cal. Jur. 745, sec. 26; *Ultramares Corp.* v. *Touche,* 255 N. Y. 170 [174 N. E. 441]; 26 Ill. L. Rev. 49.)

In addition to such a right of action in tort for negligent misrepresentation, defendant has another means by which his investment may be protected. The contract, and indeed, the entire transaction between Hubbard and defendant was believed by them to convey a security title to defendant. By reason of their failure to comply fully with the technical statutory provisions, the contemplated title did not materialize, but between the parties and others who are not innocent third parties, an equitable lien should arise in favor of defendant to secure the money lent. The requirements of such a lien are fully met here: " . . . if the intent appear to give, or to charge, or to pledge property, real or personal, as a security for an obligation, and the property is so described that the principal things intended to be given or charged can be sufficiently identified, the lien follows." (3 Pomeroy, Equity Jurisprudence, 2968, sec. 1237; see *Nau* v. *Santa Ana Sugar Co.,* 79 Cal. App. 685 [250 Pac. 705].) There is nothing inequitable in this result, for plaintiff is not an innocent party, and the lien of defendant is measured by the extent of the loss actually suffered by him, a loss which was caused by the plaintiff's own act.

It follows that plaintiff still has title to the truck; but that defendant has a lien upon it for the amount of his loan together with interest thereon. The judgment is therefore reversed with directions to the trial court to ascertain said sum due, and to take any further evidence and permit such further or amended pleadings as may be necessary to enable it to render judgment is accordance with the conclusions reached herein; and it is further ordered that neither party shall recover costs.

Richards, J., Shenk, J., Seawell, J., and Preston, J., concurred.