UNITED PORTO RICAN BANK, Plaintiff and Appellee-Appellant, *v.* RUFINO RUIZ ET AL., Defendants and Appellants-Appellees.

No. 5686.   Argued May 20, 1932.—Decided May 25, 1932.

*F. Soto Gras* and *R. Díaz Collazo* for appellants-appellees.   *Molina, Dubón & Ochoteco* and *Walter L. Newsom, Jr.*, for appellee-appellant.

Mr. Chief Justice Del Toro delivered the opinion of the Court.

This case involves the construction and operation of a newly enacted law in Puerto Rico called the "Personal Property Mortgage Law," Act. No. 19 of 1927 (Session Laws, p. 490).

The complaint alleged, in short, that on September 6, 1928, Eusebio Benítez Carrillo, a resident of Caguas, being the owner and holder of certain chattels which were located in that municipality, mortgaged said chattels in favor of the plaintiff, which is a corporation organized under the Banking Act, with a principal office also in Caguas, to secure a loan amounting to $8,000; that the contract was recorded in the Registry of Property of Caguas on September 7, 1929, and that said record has not been canceled, nor the debt paid; that in July, 1929, the partnership Rosales & Ruiz purchased from the mortgagor 16 of the 18 mortgaged oxen which were described in the contract thus: "1. Indian ox, marked E. B.," (then follows, in like tenor, a description of each of the other oxen); that the vendee had notice of the mortgage from the record thereof, and slaughtered the oxen in order to sell them as meat, its acts constituting a conversion; and that the value of said oxen was $1,600. The complaint is verified, and a literal copy of the mortgage contract accompanied the pleading as a part thereof.

The defendants answered and alleged that the complaint did not state facts sufficient to constitute a cause of action, and that the District Court of San Juan, where it was filed, had no jurisdiction to take cognizance of the action. They denied the execution of the mortgage and the averment that they had purchased from Eusebio Benítez the 16 oxen in question, and alleged that in July, 1929, they purchased from Eusebio Benítez, as agent of Agustín Díaz, 12 steers belonging to Díaz for the sum of $747.38. The answer contains other allegations which we do not deem necessary to transcribe.

The case went to trial, and after much evidence was introduced, the court finally rendered a decision adjudging the defendants to pay to the plaintiff the sum of $747.38 and legal interest thereon from the date of the filing of the complaint, October 29, 1929, without special imposition of costs.

Both parties appealed. We shall proceed in the first place to consider and decide the appeal taken by the defendants. They assign four errors in their brief.

By the first assignment it is maintained that the court erred in declaring that it had jurisdiction to hear the case. We know that the plaintiff corporation has its principal office in Caguas, and that in that municipality also the mortgagor resided, the goods were located when they were mortgaged, and the mortgage was recorded. By stipulation, it was admitted that the mortgage was not recorded in the Registry of Property of San Juan.

In their argument under that assignment the defendants invoke section 14 of the applicable act which in its pertinent part reads as follows:

"Section 14.—The mortgagee may, after ten days from the time the condition is broken, cause the mortgaged property or any part thereof to be sold at public auction by the marshal of the district where the said mortgagor resides, or where the property is situated, . . . and the mortgagee shall notify the mortgagor, or the person in possession of or in charge of the property, and also the persons holding subsequent mortgages that appear of record in the office of the registrar of property of the district where the original mortgage is recorded, of the time and place of sale . . . .

"The marshal may be either the marshal of a municipal court or of a district court, in accordance with the jurisdictional amount involved, as now provided by law, and the sale must be made in the office of the marshal . . ."

As may be seen, the relief sought in the case at bar is distinct from that which could have been demanded, in a proper case, under section 14 of the act. The appellants themselves admit that no other section of the law specifically

provides what court should take cognizance of a case like the present one. That being so, and there being involved courts of general jurisdiction, as are the district courts of this Island, we are of opinion that the complaint could have been filed in any one of them, subject to a change of venue at the instance of the defendant in accordance with the provisions of the Code of Civil Procedure; and the logical thing seemed to be to file it, as it was filed, in San Juan, the district where the mortgaged property was sold and where the defendant vendees resided.

The second assignment of error is formulated thus:

"The district court erred in holding that the recording of a chattel mortgage in a given district is sufficient notice to all persons of the right of the mortgagee."

Section 4 of the act prescribes as follows:

"Section 4.—A personal-property mortgage shall not be valid against any person except the mortgagor, his heirs, legatees, executors or administrators, unless the mortgage is recorded in the registry of property of the district in which the mortgagor resides at the time of making the same, or if he resides outside of Porto Rico, in the district in which the property is situated; *Provided, however,* That if the property is situated in a different district from that in which the mortgagor resides, the mortgage shall be recorded in the registry of property of both the district in which the mortgagor resides and that in which the property is situated."

Section 9 provides:

"Section 9.—No personal property upon which a personal-property mortgage is in force shall be removed from the municipality in which the same is located at the time of the execution of the mortgage without the written consent of the mortgagee, and if such consent is given a certified copy of the mortgage shall be recorded in the registry of property of the district to which the property is removed."

In our opinion, in accordance with the facts alleged and proved in the case at bar, it was only necessary to record the mortgage in the Registry of Property of Caguas. That would be sufficient to produce all the effects of the registra-

510

tion, namely, to give notice to all persons of the encumbrance existing on the property.

In 5 Cal. Jur. 56, it is said:

"Though there are no provisions in the codes which expressly make the recordation of a valid chattel mortgage constructive notice of its contents, yet it is well established that such recordation is notice to all the world of the contents of the mortgage, and consequently subsequent purchasers and encumbrancers take subject to the lien of the mortgage since they are charged with notice thereof."

The California case of *Hopper* v. *Keys,* 152 Cal. 488, invoked by the appellants, is not applicable, because the law in that State concerning registration in another district is different from ours. Here section 9, already transcribed, is the controlling enactment, and the facts show that the time to apply the same had not yet arrived. Moreover, in *Himmels* v. *Sentous,* 91 Pac. 327, the Supreme Court of California held:

"Civil Code, par. 2965, provides that, where mortgaged chattels are removed to another county, they are relieved from the operation of the mortgage, except as between the parties, unless the mortgagee within 30 days after such removal causes the mortgage to be recorded in the county to which the property is removed or takes possession. *Held* that, where mortgaged property is removed to another county by the mortgagor, the mortgage remains a subsisting lien, of which the original record is constructive notice to all the world during the 30 days after such removal within which the mortgagee is authorized to continue the lien by re-recording the mortgage or taking possession.

"Where, after the removal of mortgaged hogs to another county, the mortgagor sold them to defendants, who slaughtered them and sold the meat within 30 days after such removal, the mortgagee's failure to re-record the mortgage in the county to which the hogs were removed after they had been killed did not impair his lien nor his right to recover against defendants for the conversion of the hogs.

"In the absence of specific statutory provisions regarding the removal of mortgaged chattels, the regular original record of a chattel mortgage is constructive notice to all the world, and the mortgage continues a valid lien, notwithstanding the removal of the property to another town, county, or state."

The adjudicated cases on this point are numerous. The notice has been given effect, even beyond the limits of the state where the mortgage was recorded. We will confine ourselves to quoting from one of the many cases cited by the plaintiff in its brief, thus:

"Nearly all of the courts of this country have closely adhered to the rule that if a mortgage is duly executed and filed in a state where the property is located at the time, and the mortgagor subsequently removes the property from its situs into another state, the courts of the latter will enforce the provisions of the mortgage as against the creditors of the mortgagor and subsequent incumbrancers or purchasers in good faith for value, even if the mortgage has not been filed in conformity with the laws of the latter state." *Greenville Nat. Bank* v. *Evans-Snider-Buel Co.*, 60 Pac. 249, 252.

The argument that our law by its section 12 provides that if the debtor violates, among others, the aforesaid section 9 he will be guilty of a misdemeanor, is not decisive. The punishment that can be imposed on the debtor is independent. It does not supply the security afforded by the mortgage and its registration.

The third assignment relates to the insufficiency of the description of the chattels mortgaged. ·The error does not exist, in our opinion. The fuller and more complete the description, the better it is; but in the instant case the one set forth conforms to the usual practice in the Island, and the plaintiff cites cases in which the courts have found sufficient even descriptions that are less detailed.

The fourth and last assignment of error relates to the weight accorded to the evidence. It is also nonexistent. The finding made by the trial court· to the effect that the oxen purchased by the defendants were mortgaged, is justified and appears to be proper and just..

Defendants' appeal having thus been disposed of, we shall now proceed to consider and decide the appeal taken by the plaintiff. It assigns two errors. It is urged in the first that it was proved that the oxen were worth at least

$1,200 and, therefore, that that sum and not the one paid by the defendants should have served as the basis for fixing the damages.

We agree with the appellant that it is the value of the thing claimed that should be taken into account. We think that this was also the view of the trial court. What happened was that said court did not think that it had been proved, beyond all doubt, that the oxen were worth more than was paid for them, and it adopted the purchase price as their fair value. And we are not convinced that the court erred in so doing.

The last assignment of error relates to the failure to impose costs. A new law was involved, and the court, in the exercise of its discretion, rendered judgment without any special imposition of costs; which means that each party shall pay its own costs. Weighing all the attendant circumstances, we do not think that the court abused its discretion.

In virtue of the foregoing, both appeals should be dismissed and the judgment appealed from, affirmed.