[Sac. No. 4891.   In Bank.—April 30, 1935.]

W. A. HENDRICKSEN et al., Respondents, v. THE STATE
SUBSIDIARY, LTD. (a Corporation), Appellant.

Barbour, Kellas & Backlund for Appellant.

J. K. Tuttle, Ben H. Johnson and G. L. Aynesworth for Respondents.

PRESTON, J.—Plaintiffs sued defendant for possession of a band of sheep and hogs. They took proper steps to claim an immediate delivery, which they secured within a few days after instituting suit. Both plaintiffs and defendant are acting in good faith in asserting the right to possession of the property. Plaintiffs claim under a chattel mortgage conferring the right of possession upon them. Defendant claims as purchaser from one Fred B. Fox. Little, however, can be said in favor of the good faith of Fox for, as the original owner of the "Fox" or "River" ranch in Madera County, he was also the owner of said herd and had it quartered thereon; likewise he was the agent of defendant and also of its affiliated corporation, California Mutual Building and Loan Association of San Jose; furthermore, he was in debt to both corporations. He conveyed the ranch and livestock to defendant in satisfaction of this indebtedness. At the same time he was also indebted to plaintiffs and soon after the conveyance to defendant, he calmly mortgaged the entire herd to plaintiffs. Hence this litigation.

Defendant, however, must yield its claim to the superior claim of plaintiffs, because it was negligent in leaving Fox in charge of both the ranch and the said livestock without any evidence of change of title to or possession of the chattels. The court below properly held that under such circumstances defendant is estopped to assert its claim over that of plaintiffs. (*Washington etc. Co.* v. *McGuire,* 213 Cal. 13, 15 [1 Pac. (2d) 437].) This is true notwithstanding the fact that the consideration for the chattel mortgage was forbearance to sue upon a preexisting debt. (*Smitton* v. *McCullough,* 182 Cal. 530 [189 Pac. 686].)

But by no means do these observations complete the story. The action was begun on November 19, 1931. Plaintiffs as noted above, secured possession of the property on or about December 10, 1931. Defendant answered claiming title and right of possession and asked that possession be restored to it but took no steps to secure a redelivery of the property. At this point the sorrow of all the litigants began. The herd had to be pastured and fed and this re-

quired an outlay of money, to which both plaintiffs and defendant contributed unequal amounts. The case was put on trial February 11, 1932, but findings were not filed until December 13, 1932, and judgment for plaintiffs was not entered until January 3, 1933. However, on May 10, 1932, while awaiting the judge's decision, the parties stipulated to a sale of the herd. On this date plaintiffs had furnished feed to the value of $755.50 and defendant had, at the special instance and request of plaintiffs, contributed therefor the sum of $2,714.96. The parties did not seem to realize the fact but nevertheless at this juncture the livestock were not worth the amount of the accumulated feed bills. In other words, in ranch parlance, they had ''eaten their heads off''. However, the sale was had and it netted only the sum of $1583.85. Pursuant to the stipulation, plaintiffs got from this fund their feed bill of $755.50 and defendant got a *pro tanto* payment of $828.35 on its feed claim.

The stipulation further provided that the balance of the fund, or proceeds, be deposited in a bank in the name of the Superior Court of Madera County, to be paid out only upon order of the court upon final determination of the litigation or further stipulation of the parties. The stipulation concluded with this language: ''That the proceeds received from the sale of said hogs and sheep, less costs of sale, shall be substituted for and take the place of said hogs and sheep for all purposes of this action from and after the receipt thereof''. But the coffers of the court still remain empty. No proceeds can ever be realized from the sale of said herd. However, undaunted by this untoward circumstance, plaintiffs insisted upon and secured, by the above mentioned judgment, an award against defendant of $3,221, representing the full value of the herd on the day that they secured possession thereof. From such judgment defendant has appealed.

In other words, plaintiffs secured possession of the property, retained such possession until the expense of subsistence swallowed up the value thereof, and now, the defendant, they say, must pay them the value of the property at time of suit as a penalty for asserting an adverse interest in it. To be more specific, defendant surrendered possession of the property at the institution of the suit and contributed $2,714.96 to its upkeep while the property was in the posses-

sion of its adversaries, and yet now it is asked to pay $3,221 additional, besides interests and costs, as a penalty for claiming in good faith that the property really belonged to it.

It requires no particular strength of reasoning to see that there is something wrong somewhere. It still remains true that man may not eat his cake and keep it also. The fallacy in plaintiffs' reasoning is that they secured the property and kept it and there can be no judgment for the value thereof in lieu of such possession. The prayer of the complaint was for the value of the property in the event delivery thereof could not be had. But such delivery was immediately claimed, secured and retained. Suppose that on the day plaintiffs secured the property from defendant the whole herd had died. Would defendant be liable for the value of the herd because it asserted, in good faith, that it was entitled to possession thereof? The possession of the livestock was the full demand of the suit and this possession was immediately secured. To confirm this right, with costs and with special damages, if any, would be the sole relief that plaintiffs would have the right to enjoy. No such special damages were pleaded nor can it be seen how such could arise. Likewise no damages for unlawful detention were pleaded or shown. It is true that at the beginning of the trial plaintiffs filed a supplemental complaint, alleging that the feed bill was accruing at the rate of $13 a day and would eventually reach a total of $1500 before termination of the litigation and prayed for these sums as special damage. But the court gave no judgment on this issue and, moreover, it appears to have been thoroughly disposed of by the fact that defendant advanced for feed, above all offsets, more than the full value of the herd. No support can be found in this record for a judgment in the sum of $3,221 or in any other sum.

The judgment is reversed.

Curtis, J., Shenk, J., Thompson, J., Seawell, J., and Waste, C. J., concurred.

Rehearing denied.