UNITED PORTO RICAN BANK, demandante-apelada-apelante, *v.* RUFINO RUIZ e IGNACIO ROSALES, haciendo negocios bajo la razón social de ROSALES & RUIZ, demandados-apelantes-apelados.

No. 5686.—*Sometido:* Mayo 20, 1932. *Resuelto:* Mayo 25, 1932.

* NOTA: Véase el prefacio.

*F. Soto Gras* y *R. Díaz Collazo,* abogados de los apelantes-apelados; *Molina, Dubón & Ochoteco* y *Walter L. Newsom, Jr.,* abogados de la apelada-apelante.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

Está envuelta en este caso la interpretación y aplicación de una ley nueva en Puerto Rico, la llamada ''Ley Hipotecaria de Propiedad Mueble,'' o sea la No. 19 de 1927, Leyes de 1927, pág. 491.

En la demanda se alegó, en resumen, que el 6 de septiembre de 1928, Eusebio Benítez Carrillo, residente en Caguas, siendo dueño y poseedor de ciertos bienes muebles que se encontraban en dicha municipalidad, los hipotecó a favor de la demandante, que es una corporación organizada bajo la ''Ley de Bancos'' con oficina principal también en Caguas, para garantizar un préstamo de ocho mil dólares; que el contrato fué anotado en el Registro de la Propiedad de Caguas el 7 de septiembre de 1929, sin que se haya cancelado la anotación, ni se haya satisfecho la deuda; que en julio de 1929, la sociedad ''Rosales y Ruiz'' compró al deudor hipotecario 16 de los 18 bueyes hipotecados que se identificaban en el contrato, así: ''1. Buey indio, marcado E. B.,'' (sigue la descripción en esa forma de cada uno); que la compradora tuvo conocimiento de la hipoteca por su inscripción e hizo matar los bueyes para venderlos como carne, constituyendo

sus actos una conversión (*conveyance*); y que el valor de los bueyes ascendía a $1,600.00. La demanda está jurada y forma parte de ella copia literal del contrato de hipoteca.

Contestaron los demandados alegando que la demanda no aducía hechos suficientes para determinar una causa de acción y que la Corte de Distrito de San Juan en que se presentara carecía de jurisdicción para conocer del asunto. Negaron que se hubiera constituído la hipoteca y que compraran a Eusebio Benítez los 16 bueyes en cuestión, alegando que en julio de 1929 compraron a Eusebio Benítez, en su carácter de agente de Agustín Díaz, doce cabezas de ganado por $747.38 que pertenecían a Díaz. Contiene la contestación otras alegaciones que no consideramos necesario resumir.

Fué el pleito a juicio, practicándose una larga prueba, y la corte lo resolvió finalmente condenando a los demandados a pagar a la demandante la suma de $747.38 e intereses legales a partir de la fecha de la interposición de la demanda, 29 de octubre de 1929, todo sin especial condenación de costas.

Ambas partes apelaron. Procederemos primero al estudio y resolución de la apelación de los demandados. Señalan cuatro errores en su alegato.

Por el primero sostienen que la corte erró al declararse con jurisdicción para conocer del asunto. Sabemos que la corporación demandante tiene su oficina principal en Caguas, y que en ese municipio reside también el deudor hipotecario, se encontraban los bienes cuando se hipotecaron y se inscribió el contrato de hipoteca. Por estipulación se aceptó que la hipoteca no se anotó en el Registro de la Propiedad de San Juan.

Argumentando el error invocan los demandados la sección 14 de la ley sobre la materia que dice, en lo pertinente, así:

"Sección 14.—El acreedor hipotecario puede, después de diez días desde el incumplimiento de la condición, hacer que la propiedad hipotecada, o cualquiera parte de la misma, sea vendida en pública subasta por el márshal del distrito en el cual residiere el deudor hipotecario, o en donde se encontrare la propiedad, . . . y el acreedor

hipotecario notificará al dudor hipotecario, o a la persona en posesión o a cargo de la propiedad, y también a las personas que tuvieren hipotecas subsiguientes que consten inscritas en la oficina del registrador de la propiedad del distrito en el cual estuviere inscrita la hipoteca original, de la fecha y lugar de la venta. . . .

"El máshal podrá ser el de una corte municipal o el de una corte de distrito, según fuere la cantidad jurisdiccional, según se dispone actualmente por la ley, y la venta tendrá que hacerse en la oficina del márshal. . ."

Como puede verse, lo instado en este pleito es diferente a lo que puede y debe instarse, en su caso, de acuerdo con la sección 14 de la ley. La propia parte apelante admite que ninguna otra sección de la ley prescribe algo expresamente sobre la corte que deba conocer de un pleito como éste. Siendo ello así, tratándose de cortes de jurisdicción general como son las de distrito de esta isla, creemos que la demanda pudo radicarse en cualquiera de ellas, sujeto a un cambio de lugar solicitado por el demandado de acuerdo con lo dispuesto en el Código de Enjuiciamiento Civil, y lo lógico parecía que se radicara como se radicó en San Juan, distrito en que se vendió la propiedad hipotecada y donde residían los compradores demandados.

El segundo error se formula así:

"Erró la corte de distrito al declarar que la inscripción del documento de hipoteca sobre bienes muebles en determinado distrito es una notificación suficiente a todo el mundo del derecho del acreedor hipotecario."

La sección 4 de la ley prescribe:

"Sección 4.—Una hipoteca de propiedad mueble no será válida contra persona alguna, excepto el deudor hipotecario, sus herederos, legatarios, albaceas o administradores, a menos que la hipoteca estuviere inscrita en el registro de la propiedad del distrito en el cual residiere el deudor hipotcario al tiempo de su otorgamiento, o si residiere fuera de Puerto Rico, en el distrito en que se encontrare la propiedad; *Disponiéndose, sin embargo,* que si la propiedad radicare en distinto distrito de aquel en que residiere el deudor hipotecario, se inscribirá la hipoteca en el registro de la propiedad de

ambos distritos, el distrito en el cual el deudor hipotecario reside y el distrito en el cual está radicada la propiedad.''

Y la 9 dispone:

''Sección 9.—Ninguna propiedad mueble sobre la cual estuviere vigente una hipoteca de bienes muebles será removida del municipio en que se encontrare en la fecha del otorgamiento de la hipoteca sin el consentimiento por escrito del acreedor hipotecario, y si se otorgare dicho consentimiento, se inscribirá una copia certificada de la hipoteca en el registro de la propiedad del distrito al cual fuere removida dicha propiedad.''

A nuestro juicio, de acuerdo con los hechos alegados y probados en este caso, sólo era necesario inscribir la hipoteca en el Registro de la Propiedad de Caguas. Con ello se lograban obtener todos los efectos llamados a producirse por la inscripción, a saber: notificar a todo el mundo el gravamen constituído sobre la propiedad.

En 5 Cal. Jur. 56, se dice:

''Aunque no hay disposición alguna en los códigos que expresamente haga que la inscripción de una hipoteca válida sobre bienes muebles constituya aviso implícito de su contenido, sin embargo, está consagrado el principio de que tal inscripción es un aviso a todo el mundo sobre el contenido de la hipoteca, y, por consiguiente, compradores y tenedores de gravámenes posteriores adquieren sujetos al gravamen de la hipoteca, por imputárseles conocimiento de la misma.''

El caso de California, *Hoope* v. *Keys*, 152 Cal. 496, que invocan los apelantes, no es aplicable porque la ley en dicho estado sobre inscripción en otro distrito es diferente a la nuestra. Aquí la que rige es la sección 9 transcrita y los hechos demuestran que no había llegado el momento de aplicarla. Además, por la propia Corte Suprema de California en el caso de *Himmels* v. *Sentous et al.*, 91 Pac. 327, se resolvió:

''El artículo 2965 del Código Civil dispone que cuando bienes muebles hipotecados son trasladados a otro distrito, quedan relevados de los efectos de la hipoteca, salvo en lo que a las partes entre sí respecta, a menos que el acreedor hipotecario, dentro de treinta días

después de tal traslado, haga que se inscriba la hipoteca en el condado al que se trasladó la propiedad, o tome posesión de la misma. *Se resolvió:* que cuando el deudor hipotecario traslada los bienes hipotecados a otro condado, la hipoteca subsiste como gravamen cuya inscripción original constituye aviso implícito a todo el mundo durante los treinta días subsiguientes al traslado dentro de los cuales el acreedor hipotecario está autorizado a continuar el gravamen inscribiendo nuevamente la hipoteca o tomando posesión de los bienes.

"Cuando después de llevarse los cerdos hipotecados a otro distrito el deudor los vendió a los demandados quienes los sacrificaron y vendieron la carne dentro de treinta días después de tal traslado, el hecho de que el acreedor hipotecario dejara de reinscribir la hipoteca en el condado al cual fueron trasladados los cerdos después de haber sido muertos, no menoscababa su gravamen ni su derecho a ir contra los demandados por la apropiación ilícita de los cerdos.

"A falta de disposiciones estatutarias específicas acerca del traslado de propiedad hipotecada, la inscripción original corriente de una hipoteca de esa naturaleza, constituye un aviso implícito a todo el mundo, y la hipoteca continúa siendo un gravamen válido a pesar de que la propiedad haya sido trasladada a otro pueblo, condado o estado."

La jurisprudencia sobre la materia es abundante. Se ha dado fuerza a la noticia, aun fuera de los límites del estado en que se constituye y registra la hipoteca. Nos limitaremos a transcribir algo de uno de los muchos casos que cita la parte demandante en su alegato. Dice:

"Casi todos los tribunales de este país se han hecho solidarios de la regla de que si una hipoteca se otorga debidamente y se inscribe en un estado en que entonces ubica la propiedad y el deudor hipotecario posteriormente se lleva la propiedad de su *situs* para otro estado, las cortes del último harán valer las disposiciones de la hipoteca contra los acreedores del deudor hipotecario y contra subsiguientes tenedores de gravámenes o compradores de buena fe y a título oneroso, aun cuando la hipoteca no haya sido inscrita de conformidad con las leyes del último estado. Greenville Nat. Bank v. Evans-Snider-Buel Co., 60 Pac. 249, 252."

El argumento de que nuestra ley en su sección 12 dispone que si el deudor infringiere entre otras la indicada sección 9 será culpable de delito menos grave, no es decisivo. El cas-

tigo que pueda imponerse al deudor es independiente. No suple la garantía que otorga la hipoteca y su inscripción.

El tercer error se refiere a la insuficiencia de la descripción de los bienes hipotecados. No existe, a nuestro juicio. Todo lo más clara y detallada que pueda ser la descripción, mejor, pero la aquí dada es la corriente en la isla y se citan por la demandante casos en que los tribunales han estimado bastantes descripciones aun menos detalladas.

El cuarto y último señalamiento de error versa sobre la apreciación de la prueba. Tampoco existe. La conclusión a que llegara la corte sentenciadora acerca de que los bueyes que compraron los demandados eran los hipotecados, está sostenida y parece la procedente y justa.

Resuelta así la apelación de los demandados, procederemos al examen y resolución de la de la demandante. Dos errores señala. Por el primero sostiene que se demostró que los bueyes valían por lo menos $1,200.00 y por lo tanto que esa suma y no la pagada por los demandados debió ser la norma para fijar la indemnización.

Convenimos con la apelante en que es el valor de la cosa reclamada lo que debe tomarse en cuenta. Creemos que ése fué también el criterio del tribunal sentenciador. Lo que pasó fué que dicho tribunal no consideró que se había demostrado sin lugar a dudas que los bueyes valieran más de lo pagado por ellos y adoptó lo pagado como su justo valor. Y no estamos convencidos de que errara al proceder de tal modo.

El otro señalamiento versa sobre la no imposición de las costas. Se trataba de una ley nueva y la corte usando de su poder discrecional, falló sin especial condenación de costas, lo que quiere decir que cada parte pagará las suyas. Apreciando todas las circunstancias concurrentes, no creemos que abusara de su discreción.

En tal virtud, deben declararse sin lugar ambas apelaciones, *confirmándose en todas sus partes la sentencia recurrida.*