THE UNITED PORTO RICAN BANK, demandante y apelante, *v.* DEOGRACIAS GONZÁLEZ VDA. DE JIMÉNEZ, demandada y apelada.

No. 6082—*Sometido:* Diciembre 8, 1933. *Resuelto:* Mayo 31, 1934.

*Fiddler & Newsom Jr.,* abogados del apelante; *L. Llorens Torres,* abogado de la apelada.

El Juez Presidente Señor del Toro, emitió la opinión del tribunal.

Versa este pleito sobre daños y perjuicios causados por virtud de la alegada "coversión para su propio beneficio" por parte de la demandada de cierta propiedad mueble hipotecada a favor del demandante. Se reclaman $3,000 valor que se da a la propiedad convertida, intereses desde agosto 1, 1929, fecha en que vencía la hipoteca, y las costas del pleito.

De los autos aparece que el 27 de junio de 1928, José J. González Nieves constituyó a favor de The United Porto Rican Bank, el demandante, una hipoteca para asegurar un préstamo de $4,000 que el demandante le hiciera a vencer el 30 de junio de 1929, sobre cuarenta y un bueyes de su pertenencia y de los cuales se encontraba en posesión en el Municipio de Gurabo. El contrato otorgado al efecto se inscribió en el Registro de la Propiedad de Caguas el 3 de julio de 1928.

Así las cosas, la demandada Deogracias González Viuda de Jiménez en pleito que siguiera contra el dicho José J. González Nieves en cobro de dinero en la Corte de Distrito de San Juan, solicitó y obtuvo que se expidiera una orden de aseguramiento de sentencia dirigida al Márshal de la

Corte de Distrito de Humacao que fué cumplimentada por este funcionario embargando como de la propiedad del allí demandado José J. González Nieves treinta de los cuarenta y un bueyes hipotecados, entregándolos en depósito a Fausto Carrasquillo, de Gurabo. El embargo se verificó en agosto 27, 1928.

En octubre 4, 1928, se falló en rebeldía el pleito iniciado por la demandada en San Juan condenándose al repetido José J. González Nieves a pagarle mil dólares, intereses y costas y la aquí demandada y allí demandante pidió a la corte que dictara una orden nombrando depositario de los bueyes embargados a Santiago Calderón y ordenando el traslado de los mismos del distrito de Caguas al de San Juan, y no obstante la oposición del United Porto Rican Bank, la corte así lo decretó.

Al verificarse el traslado sólo se encontraron veinte bueyes de los treinta embargados, manifestando el depositario que los diez restantes perecieron con motivo del ciclón de San Felipe. Los veinte bueyes trasladados se vendieron en pública subasta, en el distrito judicial de San Juan y en la ejecución de la sentencia en rebeldía el 18 de febrero de 1929 por la suma de $700 que el márshal entregó a la aquí demandada por medio de su abogado. The United Porto Rican Bank no fué notificado de la subasta ni de la venta. Ni en los anuncios de la subasta ni en el momento de la venta se hizo constar que los bueyes estaban hipotecados. Vencido el préstamo garantizado con la hipoteca, no fué pagado por el deudor José J. González Nieves al United Porto Rican Bank en todo ni en parte, ni lo había sido a la fecha del juicio de este pleito, febrero 17, 1931.

La Corte de Distrito de Humacao falló en contra del demandante, con costas. En la opinión que emitiera para fundar su sentencia sostuvo que no se había demostrado en el juicio la inscripción de la hipoteca, motivo por el cual no podía imputarse conocimiento de su existencia a la demandada con anterioridad al embargo y que el conocimiento que

la demandada tuvo después no le impidió seguir adelante la ejecución porque los bienes hipotecados son susceptibles de embargo y venta, no adquiriendo desde luego el comprador otro derecho que el que tuviera el deudor ejecutado.

■ Llama la corte sentenciadora en su opinión la atención hacia el hecho de que al trasladarse los bueyes hipotecados a San Juan no inscribió el demandante su hipoteca en ese distrito, y termina diciendo:

"Si no lo hizo así y perdió por ello su hipoteca la validez que dicha inscripción le hubiera concedido contra todos, no puede reclamar de otras personas por las consecuencias que hubiera podido tener, en su perjuicio, su propia negligencia. La inscripción en el Distrito Judicial de San Juan era, a juicio de la Corte, el medio que tenía el United Porto Rican Bank para evitar los perjuicios que ahora se reclaman. Si no encontraba suficiente este remedio, pudo haber recurrido a cualquier procedimiento judicial, en ley o equidad, a que le asistiera derecho, y si omitió recurrir a ellos no tuvo culpa en dicha omisión la demandada en este caso."

Una vez que el demandante se enteró de la opinión de la corte, le pidió que abriera el caso de nuevo para la presentación del contrato original de hipoteca con su nota de inscripción en el Registro de la Propiedad de Caguas, explicando las circunstancias por virtud de las cuales había quedado en el récord una copia del contrato en vez del original. A ese efecto se presentó una estipulación firmada por los abogados de ambas partes sobre sustitución de *exhibit*.

La corte resolvió la cuestión suscitada como sigue:

"De acuerdo con la estipulación de las partes, que precede, la Corte tiene por sustituída la copia por duplicado del contrato de hipoteca, fechado en junio 27 de 1928, como *exhibit* No. 1 de la demandante, en lugar de la copia triplicada que aparece unida a los autos, y tiene por enmendada su opinión de 29 de mayo de 1931, en todo lo que se refiera a la no inscripción de la hipoteca en el Registro de la Propiedad de Caguas."

De suerte que todas las conclusiones de la corte sentenciadora basadas en la falta de inscripción de la hipoteca en

el distrito original, caen por su base. Inscrita la hipoteca con anterioridad al embargo, hay que concluir que la demandada tenía pleno conocimiento de su existencia. Ya esta corte interpretando la ley especial sobre la materia—Ley No. 19 de 1927—en el caso de *United Porto Rican Bank* v. *Ruiz*, 43 D.P.R. 528, resolvió, copiando del resumen, lo que sigue:

"La inscripción de una hipoteca de bienes muebles en el distrito en que reside el deudor y radican los bienes, es una notificación a toda persona—resida o no dentro de dicho distrito—del gravamen constituído sobre la propiedad."

Y a esa conclusión debe llegarse sin que tuviera que inscribirse de nuevo la hipoteca en el Registro del Distrito de San Juan, porque como también se resolvió en el caso de *United Porto Rican Bank* v. *Ruiz*, supra, "sólo es necesario inscribir nuevamente la hipoteca en le registro del distrito al que se trasladen los bienes, cuando dicho traslado se verifica con el consentimiento del acreedor" y aquí el traslado se verificó no ya sin el consentimiento si que contra la expresa oposición del acreedor.

Partiendo de esa base, esto es, del conocimiento de la existencia de la hipoteca a favor del demandante, veamos si la demandada pudo embargar la propiedad hipotecada en la forma en que lo hizo y, prescindiendo por completo de los derechos del dueño de la hipoteca, pudo obtener que los bienes hipotecados se vendieran en pública subasta y apropiarse del total producto de la venta.

A nuestro juicio la propiedad hipotecada pudo embargarse, pero no en la forma en que lo fué. Aquí, según revelan los autos, el embargo se practicó como sigue:

". . . certifico que en cumplimiento. . . embargué los bienes propiedad de los demandados que se relacionan a continuación: . . .

"Y el ganado vacuno descrito a continuación, propiedad de José J. González: . . ."

Es decir, que se embargaron los bueyes como si pertene-

cieran totalmente a José J. González cuando lo cierto era que a virtud de la previa transacción que con él había celebrado el demandante éste había adquirido un interés en ellos del que la demandada no podía prescindir. Sólo hubiera sido válido el embargo si se hubiera trabado sujeto a ese interés.

A tal conclusión llegamos inspirándonos en el principio de que debe darse vida en todo lo posible a la libertad de la contratación y a la circunstancia de referirse la sección 13 de la ley a "un acreedor que haya embargado subsiguientemente." De otra suerte, teniendo en cuenta la historia de las hipotecas sobre bienes muebles, nos hubiéramos visto obligados a decidir que el embargo no hubiera podido ni siquiera trabarse. Véase Jones, Chattel Mortgages (5a. ed.) págs. 1 a 2, y 752 a 753, y lo que dice la Corte Suprema de Filipinas en el caso de *Bachrach* v. *Mantel,* 25 J. F. 422, como sigue:

"Según la Ley Hipotecaria de Bienes Muebles, el acreedor hipotecario viene a ser el dueño de los bienes en el sentido de que tiené el título legal, quedando al deudor hipotecario el derecho a retener la posesión, a disfrutar de las ventajas que se derivan de su uso y a cancelar el título del acreedor hipotecario por medio del cumplimiento de los términos de la escritura de hipoteca. En cierto sentido, el acreedor hipotecario es en derecho el dueño (*legal owner*), y el deudor hipotecario es el dueño en equidad (*equitable owner*)."

Nos estamos refiriendo a la ley especial sobre la materia—la 19 de 1927—tal como regía cuando ocurrieron los hechos de este caso. Posteriormente la sección 10 de dicha ley fué enmendada como sigue:

"Sección 10.—Ningún deudor hipotecario de propiedad mueble venderá, pignorará y de otro modo dispondrá o gravará propiedad hipotecada por él, o parte alguna de la misma sin el consentimiento por escrito del acreedor hipotecario. Pero tal propiedad podrá ser embargada previa consignación en la secretaría de la corte que entienda en el asunto, del importe de la obligación hipotecariamente garantizada; *Disponiéndose,* que los bienes embargados no podrán ser removidos del municipio en que se encontraren antes de que tal

consignación se hubiese efectuado, salvo lo dispuesto en la sección 9 de esta Ley.'' Ley No. 71 de 1930, Leyes de 1930, p. 449.

Fué el embargo en la forma en que se trabó el primer paso contrario a la ley y al derecho del demandante que dió la demandada. No hubiera tenido consecuencias si el derecho del demandante hubiera sido posteriormente reconocido. Mas no fué así. En violación completa de lo dispuesto en la ley, la demandada pidió y obtuvo el traslado de los bienes a otro distrito. Decimos en violación completa de lo dispuesto en la ley porque de modo terminante su sección 9 prescribe:

"Sección 9.—Ninguna propiedad mueble sobre la cual estuviere vigente una hipoteca de bienes muebles será removida del municipio en que se encontrare en la fecha del otorgamiento de la hipoteca sin el consentimiento por escrito del acreedor hipotecario, y si se otorgare dicho consentimiento, se inscribirá una copia certificada de la hipoteca en el registro de la propiedad del distrito al cual fuere removida dicha propiedad.'' Ley No. 19 de 1927, p. 491, 499.

Y una vez trasladados los bienes, continuando en la comenzada y seguida violación de la ley y de los derechos del demandante, la demandada logró que dichos bienes se vendieran y se apropió del total importe de la venta.

¿Pudo actuar impunemente de tal modo? ¿La escuda el haberlo hecho a virtud de órdenes de la corte y por medio de los funcionarios de la misma?

Sólo hemos tenido el beneficio del alegato de la parte apelante. La parte apelada no compareció al acto de la vista ni presentó su alegato dentro del nuevo término que a ese efecto se le reservara. En tales condiciones, de acuerdo con el estudio del caso hecho por nosotros mismos, creemos que ambas preguntas deben contestarse en la negativa. Los actos de la demandada fueron voluntarios, más que voluntarios, deliberados, ya que continuaron hasta el fin después de la expresa oposición del demandante, y en su consecuencia debe ser responsable del daño que con los mismos causara, pudiendo reclamarse ese daño por la vía judicial irrespec-

tivamente de cualquiera otra acción que el demandante hubiera podido ejercitar contra los márshals de Humacao y San Juan, o en persecución de los bienes hipotecados.

¿Cuáles fueron los daños que se causaron al demandante como consecuencia de los actos de la demandada? La demandante sostiene que esos daños consisten en el valor de los bienes hipotecados a favor del propio demandante que la demandada convirtió en suyos a virtud del embargo y venta, calculado dicho valor en el momento del embargo, y tiene razón a nuestro juicio.

Hubo prueba sobre el particular. El testigo Julio Rodríguez declaró "que era mayordomo de la finca 'Nave' en Gurabo, y que lo era en agosto de 1928; que tenía a su cargo los bueyes que había en la colonia; que en dicha finca había 30 bueyes en agosto de 1928; que él había cotejado con el Licdo. Molina la lista de los bueyes que están relacionados y descritos en el exhibit No. 1 de la demandante; que los 30 bueyes referidos eran los mismos hipotecados a The United Porto Rican Bank; que dichos bueyes fueron embargados por Deogracias González y que él mismo le entregó los bueyes al márshal; que para aquella época los bueyes estaban en buenas condiciones; que eran bueyes jóvenes; que hace como 16 años que se dedica a la agricultura; que en aquella fecha bueyes como ésos se vendían a seis pesos arroba; que los bueyes tenían un promedio de 16 arrobas cada uno; que venían a ser unos noventa y seis pesos cada buey."

Otro testigo, Santos Torres, manifestó que había visto los bueyes que pastaban en la finca "Nave," que eran bueyes jóvenes y que en su opinión valían a seis pesos la arroba.

Y, José J. González Nieves, el deudor, declarando como testigo manifestó "que los bueyes de que se trata en este caso fueron comprados en 1927; que en agosto 27 de 1928 dichos bueyes tenían un valor de seis pesos la arroba, y en la fecha en que fueron trasladados a la finca del Sr. Carrasquillo valían tres mil dólares, o sea a cien dólares cada uno.'

Esa prueba no fué contradicha. Calculados a noventa y seis dólares cada buey, el precio de todos sube a $2,880 que es la suma que la demandada debe satisfacer al demandante, con intereses legales a partir del 18 de octubre de 1929 fecha en que se radicó la demanda.

Se alegó en la contestación y puede admitirse que se probó en el juicio que diez de los bueyes embargados perecieron con motivo del ciclón de San Felipe. Eso no obstante, creemos que la demandada está obligada a reintegrar su valor. Fué a virtud de sus gestiones y para su propio beneficio que los bueyes fueron sacados del poder y posesión del deudor y depositados en otra persona que los puso a pastar en la finca que invadió el río cuando el ciclón. No se, demostró que dichos bueyes hubieran perecido ni hubieran quedado en poder del deudor.

*Debe revocarse la sentencia apelada y dictarse otra declarando la demanda con lugar y condenando a la demandada a pagar al demandante $2,880 con intereses legales a partir del 18 de octubre de 1929, y las costas del pleito.*