JUAN A. SANTIAGO, h/n como JOSÉ SANTIAGO E HIJO, SUCR., peticionario, *v.* TRIBUNAL SUPERIOR DE PUERTO RICO, SALA DE SAN JUAN, HON. JOSÉ M. CALDERÓN, JR., JUEZ, demandado; CÁMARA DE COMERCIANTES MAYORISTAS, interventora.

*Número:* C-65-82      *Resuelto:* 4 de abril de 1966

---

*Carmelo Ávila Medina* y *Roberto Ávila Rivera,* abogados del peticionario; *Rodríguez Ema* & *Rodríguez Ramón, Rodolfo Sequeira* y *Nicolás Jiménez,* abogados de la interventora.

Sala Primera integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Hernández Matos, Rigau y Dávila.

EL JUEZ ASOCIADO SEÑOR HERNÁNDEZ MATOS emitió la opinión del Tribunal.

El 27 de abril de 1964 Corporación Puertorriqueña de Servicios de Alimentos libró un pagaré a la orden de Juan A. Santiago por $5,000.00 y para garantizarlo constituyó hipoteca sobre un equipo de cafetería compuesto de unas 17 piezas, registrándose la hipoteca mobiliaria el 20 de mayo de 1964.

El 18 de agosto siguiente Cámara de Comerciantes de Mayagüez demandó a la deudora hipotecante Corporación Puertorriqueña de Servicios de Alimentos, ante la Sala de San Juan del Tribunal Superior, en cobro de $4,048.59. Para asegurar la efectividad de la sentencia obtuvo el embargo de varios bienes muebles y de un certificado de acciones, quedando esos bienes depositados en dos almacenes bajo la custodia de un depositario designado por el tribunal.

Se obtuvo sentencia en rebeldía contra la corporación demandada. Para su ejecución se libró mandamiento el 25 de enero de 1965. Por estar bastante apartados entre sí los dos almacenes en que se hallaban depositados los bienes muebles embargados, el tribunal dispuso la celebración de dos subastas, una en cada almacén. Para ello el alguacil expidió edictos anunciando la primera subasta de parte de los bienes para las diez de la mañana del 20 de abril de 1965, en un almacén situado en la vieja carretera de Isla Verde y la segunda subasta en el mismo día, pero a las dos de la tarde, en otro almacén de Puerta de Tierra.

Así las cosas, el 31 de marzo de 1965 el acreedor hipotecario Juan A. Santiago compareció en dicho pleito sobre cobro de dinero, presentando una moción de intervención en la que expuso ser el titular del relacionado crédito hipotecario y que los bienes muebles hipotecados habían sido embargados en ese pleito y serían objeto de esas subastas junto con otros bienes muebles, sin que la demandante Cámara de Comerciantes Mayoristas hubiera consignado al embargar, el principal del crédito ascendente a $5,000.00 conforme a ley. Solicitó la suspensión de las subastas y la nulidad del embargo.

La vista de esa moción fue celebrada el 9 de abril de 1965. No asistió a la misma el letrado del acreedor hipotecario interventor, pero sí el de la demandante quien ". . . manifestó al Tribunal *que se allanaba a ciertos hechos de la intervención* y que no habiendo comparecido el Lcdo. Ávila Medina, él trataría de comunicarse con él para preparar una estipulación relacionada con su intervención y someterla al Tribunal para su resolución."—Minuta de esa fecha—.

El tribunal a quo no suspendió las subastas. Se celebraron en la fecha y sitios anunciados, adjudicándose todos los bienes muebles objeto de las mismas a la demandante, en pago parcial del principal de la sentencia.

A la segunda subasta concurrió el letrado del acreedor hipotecario interventor e hizo constar la existencia del citado gravamen hipotecario sobre parte de los bienes a subastar. Un representante de la demandante allí mismo hizo constar— según reza el acta de la segunda subasta—:

" . . . que en este caso se embargó cierto equipo; que el Sr. Juan A. Santiago, haciendo negocio como José S. e Hijos, Sucrs., tenía una hipoteca de bienes muebles por equipo similar; que en la reclamación que dicho señor hace hoy sobre el equipo hipotecado aparecen debidamente especificados los números de serie de dicho equipo cuyos números no concuerdan con los que se están vendiendo en el día de hoy. Que . . . *está dispuesto a entregar al Sr. Santiago todo equipo adjudicado a la Cámara de Comerciantes*

*Mayoristas en la tarde de hoy que aparezca incluido en el contrato de hipoteca a que se refiere el Sr. Santiago."* (Énfasis nuestro.)

Seis días después de las subastas el allí interventor presentó una "Moción Solicitando Se Consigne Dinero." En ella expuso la celebración de las subastas, la adjudicación en pago parcial de los bienes muebles a la demandante, que entre los adjudicados estaban los hipotecados a su favor y que éstos se encontraban bajo posesión y control de la demandante y suplicó que se ordenara a la demandante consignar el principal de la hipoteca de $5,000.00 y $300.00 de intereses vencidos.

Se opuso la demandante a esa moción "por el fundamento de que ella no ha asumido en ningún momento obligación personal alguna respecto a dicho pago, siendo el único derecho del interventor el de ejecución de hipoteca mueble a que alude su moción."

Las partes dicutieron la nueva moción. El 18 de junio de 1965 dictó el tribunal de instancia una resolución favorable al acreedor hipotecario interventor, en la que, en lo pertinente, expuso y decretó:

"De acuerdo con la Ley y la jurisprudencia anteriormente citada, el embargo trabado por la demandante sobre los bienes en cuestión es nulo 'ab initio'. ARAUJO v. ARENAS, antes citado.

"La demandante teniendo conocimiento de que los bienes estaban gravados con una hipoteca de bienes muebles a favor del interventor, solicitó la venta de los mismos en pública subasta, y a pesar de la moción oportuna de intervención radicada por el interventor, insistió en que se vendieran los mismos en pública subasta en la cual se le adjudicaron dichos bienes a la demandante. El hecho de interesar la demandante que se le adjudicaran dichos bienes, como en efecto se le adjudicaron, teniendo conocimiento de la hipoteca que los gravaba y siendo el embargo trabado sobre ellos nulo, por las razones antes expuestas, la demandante viene obligada a pagar al interventor el valor de dichos bienes al momento en que trabó el embargo. UNITED PORTO RICAN BANK v. GONZÁLEZ, 46 D.P.R. 781.

"Siendo ello así, la demandante tiene la opción de pagar al interventor el valor de los bienes al momento del embargo o lo reclamado por el interventor, consistente en el importe de la hipoteca de bienes muebles que grava dichos bienes, más los intereses devengados sobre dicha hipoteca montantes a la suma de $300.00.

"De interesar la demandante pagar al interventor el valor de los bienes embargados al momento de trabarse el embargo, el Tribunal señalará una vista para que se desfile prueba en cuanto al valor de dichos bienes.

"Regístrese y notifíquese."

Solicitó la demandante la reconsideración de esa resolución aduciendo que la jurisprudencia citada por el tribunal en su apoyo no tenía el alcance que se le atribuía en dicha resolución. Alegó además, y suplicó, lo siguiente:

"3. Finalmente desea hacer constar la demandante que *no tiene interés alguno en adquirir los referidos bienes muebles y que en todo momento desde que el interventor radicara su moción de intervención, ha estado y está dispuesta a hacerle entrega de todos aquellos bienes hipotecados que figuran en el embargo,* cuya entrega no se ha llevado a cabo debido a que gran parte de los mismos no fueron objeto del embargo, y otros que figuran en el embargo pretende el interventor que se entreguen sin que haya podido satisfacer a la demandante de que figuran en el contrato de hipoteca de bienes muebles.

"POR TODO LO CUAL, la demandante respetuosamente solicita del Honorable Tribunal reconsidere su referida resolución y decrete que el único derecho que asiste al interventor es a proceder a la ejecución de los bienes hipotecados, y no a exigir de la demandante el pago del valor de los mismos, y *en su día ordene al señor Alguacil que se persone en el almacén de la demandante, o en el sitio en que estuvieren dichos bienes muebles depositados, y entregue al interventor todos aquellos que figuran en el contrato de hipoteca de bienes muebles.*" (Énfasis nuestro.)

Luego de discutida la moción de reconsideración, el tribunal de instancia reconsideró su anterior resolución, la dejó sin efecto y declaró sin lugar la moción de intervención del 23 de abril de 1965. Se fundó en que la doctrina de los casos

de *United Porto Rican Bank* y *Araújo* había quedado sin efecto por lo resuelto en *Hull Dobbs Co.* v. *Tribunal Superior*, 81 D.P.R. 221 (1959) y que el único derecho que tenía el acreedor hipotecario era la ejecución de la hipoteca de bienes muebles o el cobro personal ordinario contra la deudora original Corporación Puertorriqueña de Servicios de Alimentos.

A petición del allí interventor libramos un auto de *certiorari* para revisar los procedimientos.

Muy poca ayuda han brindado a este Tribunal los letrados de las partes para la resolución de las cuestiones envueltas en este recurso. El del recurrente sometió su caso a base del breve memorando que unió a su solicitud de *certiorari*. Pero menos hicieron los de la recurrida. Se limitaron a exponer: ". . . somete el presente recurso por los fundamentos que aparecen de la resolución recurrida . . .".

Considerando las circunstancias concurrentes en torno al incidente de intervención, estimamos errónea la resolución impugnada dictada en reconsideración de la del 18 de junio de 1965.

En primer término, la demandante Cámara de Comerciantes Mayoristas, en su solicitud de reconsideración no interesaba que se declarase sin lugar la moción de intervención; sólo pidió que se dejara sin efecto la resolución de 18 de junio con el exclusivo propósito de decretar:

" . . . que el único derecho que asiste al interventor es a proceder a la ejecución de los bienes hipotecados, y no a exigir de la demandante el pago del valor de los mismos, y *en su día ordene al señor Alguacil que se persone en el almacén de la demandante, o en el sitio en que estuvieren dichos bienes muebles depositados, y entregue al interventor todos aquellos que figuran en el contrato de hipoteca de bienes muebles*." (Énfasis nuestro.)

En segundo término, nuestra decisión en *Hull Dobbs Co.* v. *Tribunal Superior*, 81 D.P.R. 221 (1959) no tuvo el efecto de revocar totalmente la jurisprudencia establecida en *United Porto Rican Bank* v. *González*, 46 D.P.R. 781 (1934) y *Araújo* v. *Arenas*, 60 D.P.R. 284 (1942).

Lo que en relación con estos dos casos resolvimos en *Hull Dobbs Co.* fue:

"Por las anteriores razones *y en cuanto al punto aquí tratado* [si el acreedor hipotecario automáticamente se convierte en titular de la cosa mueble hipotecada o si la hipoteca constituye una medida de seguridad para el pago de la obligación principal] deben entenderse revocados los casos de *United Porto Rican Bank* v. *González,* 46 D.P.R. 781 y *Araújo* v. *Arenas,* 60 D.P.R. 284. . . . creemos que ambos casos, *en cuanto a la aplicación en Puerto Rico de la doctrina del traspaso del título,* no deben subsistir." (Énfasis nuestro.)

■ Lo demás resuelto en esos dos casos, como la nulidad del embargo de una cosa mueble hipotecada sin la previa consignación del importe de la obligación hipotecariamente garantizada, no quedó afectado.

En tercer término, el único propósito de la moción de intervención era el de obtener la declaración de nulidad del embargo sobre los bienes muebles hipotecados y evitar que fuesen subastados. La posición de Cámara de Comerciantes Mayoristas, si bien llevó a subastas todos los bienes embargados por la razones que expuso, no fue en esencia hostil, sino más bien favorable, a las pretensiones del acreedor hipotecario interventor. No atacó en momento alguno la validez del crédito hipotecario, ni su exigibilidad, ni sostuvo la validez del embargo sobre los bienes muebles efectivamente hipotecados que se identificaran como tales, ni quiso hacerlos suyos permanentemente en perjuicio del acreedor. En la primera vista informó al tribunal de instancia que "se allanaba a ciertos hechos de la intervención" y que se comunicaría con el letrado del acreedor "para preparar una estipulación relacionada con su intervención y someterla al tribunal para su resolución"; en el acto de la segunda subasta hizo constar que estaba dispuesta "a entregar al Sr. Santiago todo equipo adjudicado . . . que aparezca incluído en el contrato de hipoteca a que se refiere el Sr. Santiago"; y finalmente hizo constar en su moción de reconsideración "que no tiene interés

alguno en adquirir los referidos muebles y que en todo momento desde que el interventor radicara su moción de intervención ha estado y está dispuesta a hacerle entrega de todos aquellos bienes hipotecados que figuren en el embargo" y suplicó en ella al tribunal que "en su día ordene al señor Alguacil que se persone en el almacén de la demandante, o en el sitio en que estuvieren dichos bienes muebles depositados, y entregue al interventor todos aquellos que figuren en el contrato de hipoteca de bienes muebles."

A lo que se oponía la demandante era a que se le obligara a satisfacer el importe del crédito hipotecario sobre bienes muebles que no habían desaparecido, ni se habían ocultado, sino que estaban siendo puestos a la disposición del acreedor hipotecario a los fines de la ejecución de su crédito.

En esa situación, ¿fue justo reconsiderar su resolución anterior, en que declaraba nulo el embargo, al efecto de declarar sin lugar la moción de intervención que no tuvo oposición efectiva?

La reconsideración hubiera sido procedente con el propósito de eliminar toda imposición del pago del crédito decretado contra la demandante en el pleito, declarar nulos el embargo trabado sobre los bienes muebles hipotecados y la subasta y adjudicación de los mismos a la demandante, para que en su día pueda el acreedor hipotecario ejecutar su crédito, ordenándose, como pedía la demandante, que el Alguacil, en unión a las partes, identificara los bienes muebles hipotecados y los devolviera a su verdadero dueño o sea al deudor hipotecante Corporación Puertorriqueña de Servicios de Alimentos.

*Se anulará la resolución recurrida dictada en reconsideración el 22 de julio de 1965, y se ordenará que el caso sea devuelto al tribunal a quo para que en su lugar dicte otra en consonancia con los términos de esta opinión.*