RAFAEL ARENAS, demandante y apelante, *v.* RAFAEL BATALLA CÓRDOVA, en su carácter de Márshal de la Corte Municipal del Distrito Judicial Municipal de Caguas, P. R., demandado y apelado; y MIGUEL FRANCISCO, interventor y apelado.

No. 6734.—*Sometido:* Noviembre 27, 1934. *Resuelto:* Febrero 5, 1935.

*A. Fernández Sánchez,* abogado del apelante; *Pablo Defendini* y *Rafael F. Barbosa,* abogados del apelado.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

Rafael Arenas, de Caguas, P. R., inició en la Corte de Distrito de Humacao este procedimiento de *injunction* contra Rafael Batalla, márshal de la Corte Municipal de Caguas, alegando en resumen que para ejecutar la sentencia dictada por la Corte Municipal de Caguas en el pleito en cobro de pesos seguido ante ella por Miguel Francisco contra Felipe Licha, el márshal demandado había embargado como de la propiedad de Licha un automóvil marca Buick, tablilla 3343 y anunciado su venta en pública subasta; que el demandante era tenedor de un pagaré por ochocientos dólares suscrito por Licha el 6 de junio de 1932 para garantizar el cual Licha hipotecó el referido automóvil inscribiéndose la hipoteca en el registro el 14 de julio de 1932; que Francico no había consignado el importe de la hipoteca en la corte, y que de verificarse la subasta se causarían daños y pérdidas irreparables al peticionario.

La corte ordenó que el demandado compareciera a mostrar causa y así las cosas intervino en el procedimiento Miguel Francisco, archivando una excepción previa y una contestación en la que repetidamente alega que la hipoteca a favor de Arenas era fraudulenta porque cuando fué constituída Licha no era el dueño del automóvil habiéndolo adquirido a virtud de un contrato de venta condicional.

No aparece alegación alguna archivada por el márshal demandado. De hecho el pleito siguió entre el demandante y el intereventor, decidiéndose el 20 de junio de 1933 en contra del primero que no conforme interpuso el presente recurso de apelación.

En su relación del caso y opinión dijo la corte sentenciadora que en vista de las contradicciones que advertía en

la evidencia llegaba a la conclusión de que la hipoteca era simulada, "hecha con el único fin de burlar los derechos de terceros con créditos legales por ejecutar contra los bienes de Licha."

El alegato de la parte apelante señala un gran número de errores y los discute extensamente. Sólo nos referiremos a la simulación. Hemos examinado cuidadosamente la prueba practicada y a nuestro juicio no es bastante para concluir que está viciada de fraude la transacción entre Licha y Arenas que evidencia el documento de hipoteca.

Por prueba documental demostró el demandante que el automóvil de que se trata fué hipotecado por Licha a su favor en garantía de un pagaré por ochocientos dólares el 6 de julio de 1932, quedando inscrita la hipoteca en el registro el 14 de julio de 1932. Y no fué hasta marzo 18 de 1933 que el interventor Francisco obtuvo la sentencia contra Licha por trescientos dólares para ejecutar la cual el márshal, el 17 de mayo de 1933, embargó el automóvil de Licha.

El origen de la transacción fué explicado por el demandante bajo juramento en el juicio como sigue:

"(Dte.)—A.—Refiera de dónde surgió la deuda de $800 que se obligó él a pagarle y por qué razón se constituyó esa hipoteca.—T.— Licha me solicitó primero $200 y se los facilité; después fué con un apuro de que se le vencía un plazo del automóvil y me pidió $100 más y se los facilité, eran $300; volvió poco después a decirme de un apuro que tenía, que si no pagaba el automóvil perdía el automóvil porque era un contrato de venta condicional. Para esa fecha ya estaba atrasado en los cánones de arrendamiento, me debía $100; de modo que yo le tenía $300 facilitados al señor Licha y $100 de la casa son $400; el automóvil estaba debiendo $300 y convinimos en pagar otro plazo del automóvil que eran $100, y $200 que quedaba a deber a la casa que lo había comprado eran $700, y calculé $100 más de 4 meses con intención de que siguiera pagando después y en eso hicimos un total de $800; de modo que yo garanticé la deuda mía de $800 con una hipoteca sobre el automóvil, quedándome yo con el dinero que se le debía a la casa vendedora para pagarlos a su vencimiento, para lo cual convine por conducto del señor Mangual que en vez de pagar $91 que se pagarían $50, y en

4 meses diferentes por conducto del señor Mangual pagué los $200 que debía el automóvil cuando se hizo la hipoteca. De modo que Felipe Licha no recibió en ningún momento los $800 sino que los $800 eran los cánones de arrendamiento que me debía y lo que le debía a la casa vendedora.—A.—¿Hasta cuándo estuvo viviendo Licha en esa casa?—T.—Hará como hasta 3 ó 4 meses.—A.—¿Ud. sabía que ese automóvil estaba en venta condicional?—T.—Sí, señor. —A.—¿Él se lo dijo a Ud.?—T.—Sí, señor.—A.—¿Y sabiendo Ud. que eso estaba en venta condicional hizo el negocio?—T.—Porque no le entregué el dinero que debía del automóvil sino que me quedé con él para yo pagar la deuda que tenía del automóvil.—A.—¿Él tenía alguna otra propiedad?—T.—No, señor.—A.—¿Para la fecha que él contrajo esta deuda tenía algún otro bien?—T.—Cuando empezó a coger él tenía su negocio establecido de vendedor ambulante. —A.—¿Él alguna vez le dijo a Ud. que él tuvo cuenta alguna con un tal Miguel Francisco?—T.—No, señor.—A.—¿Cuándo fué que Ud. supo que un tal Miguel Francisco tenía una deuda en contra de Felipe Licha?—T.—Cuando el automóvil fué embargado por Miguel Francisco.—A.—¿Ud. podía hacer ese negocio?—T.—Sí, señor.—A. —¿Ud. estaba en condiciones de hacerlo?—T.—Sí, señor.—A.—¿Ud. puede decirnos qué capital tiene Ud. más o menos?—T.—Entre mi esposa y yo creo que tendremos de $20 a $25,000 de capital.''

La contradicción que advierte el juez sentenciador entre la declaración del testigo y la prueba documental del interventor consiste en que esta prueba demuestra que el 13 de enero de 1933 el automóvil continuaba inscrito en el Departamento del Interior a favor de Licha bajo contrato de venta condicional celebrado con Manuel Colón Vázquez, en julio 22, 1932, y registrado en agosto 25, 1932, por la suma de $202.45 pagadera en cuatro mensualidades la primera de $52.45 y las restantes de $50, motivo por el cual concluye el juez sentenciador que no es cierto lo manifestado por Licha al constituir la hipoteca y por Arenas al declarar en el juicio ''que en los ochocientos dólares del pagaré estaban incluídos los doscientos del crédito de Colón Vázquez y que ha pagado tal cantidad. En julio 6, 1932, no se había cancelado el contrato de $1,750 (el primitivo de venta condicional) y no se había constituído el de julio 22, 1932.''

Arenas no declaró que a la fecha de la hipoteca hubiera pagado lo que debía Licha, como consecuencia de la compra-venta condicional, sino que se incluyó en la hipoteca asumiendo él la responsabilidad de pagar dicha deuda por mensualidades de cincuenta dólares.

Es cierto que el segundo contrato de Licha con Colón aparece celebrado en julio 22, 1932, o sea, unos días después del de hipoteca, pero existía el anterior y coincide en la suma que alrededor de esas fechas debía Licha bien a Colón ya a la casa que vendió a Colón, como consecuencia de la venta condicional.

También es cierto que el último contrato, el de julio 22, 1932, no aparece cancelado en el Departamento del Interior, pero ello si bien debilita no destruye lo dicho por Arenas con respecto a haber cumplido su compromiso y pagado lo que se debía a virtud de la venta condicional.

Para que pudiera concluirse que el contrato de hipoteca es fraudulento, se necesita algo más que las dudas que puedan surgir a virtud de las indicadas contradicciones en que basa su conclusión el juez sentenciador.

En su alegato sostiene el apelado que examinando el contrato de hipoteca a la luz de la prueba practicada, debe necesariamente concluirse que carece de eficacia a virtud de las falsas afirmaciones hechas por Licha en cuanto a ser el dueño del automóvil y a estar el mismo libre de gravámenes cuando lo cierto era que el automóvil pertenecía aún al vendedor condicional y estaba sujeto al gravamen de la parte del precio no satisfecha, hechos éstos admitidos por el propio demandante en el juicio.

El *affidavit* de Licha en el documento de hipoteca dice:

"Felipe Licha, de Caguas, Puerto Rico, habiendo prestado juramento en debida forma declaro y digo:—

"Que resido en el municipio de Caguas, Puerto Rico; que soy el dueño legal de la propiedad que en la precedente hipoteca se describe, de la cual hipoteca es parte esta declaración jurada; que dicha propiedad está libre de gravámenes y cargas, excepción hecha

de la hipoteca de la cual forma parte esta declaración jurada; que no existen sentencias u órdenes de ejecución contra mí que afecten el título de dicha propiedad que se describe en dicha hipoteca; que la precedente hipoteca se otorga con el fin de garantizar la obligación especificada en ella y con ningún otro fin y que constituye una obligación justa y válida.''

Hubiera sido más claro y exacto si Licha se hubiera referido a la venta condicional y al estado actual de la misma, pero no creemos que lo que dijo pueda considerarse como falsas y fraudulentas manifestaciones que produzcan la nulidad del contrato en cuanto al interventor Francisco.

En cuanto a ser dueño del automóvil que hipotecaba, su afirmación encuentra apoyo en lo resuelto en *Montalvo* v. *Valdivieso,* 38 D.P.R. 545. En la opinión de esta corte emitida por su Juez Asociado Sr. Texidor se estudia la Ley No. 61 de 1916 (pág. 126) que estableció el sistema de las llamadas ventas condicionales y la jurisprudencia española y americana sobre el particular y se termina diciendo:

''Como un aspecto práctico de las ventas condicionales y sus efectos, es de conveniencia recordar que en las ventas condicionales de automóviles en Puerto Rico, el comprador condicional paga los gastos y primas del seguro, la licencia y la contribución del automóvil. Se halla, por tanto, en el caso de cumplir todos los deberes del dueño o propietario del carro. Y es que, legal y prácticamente, es el dueño, con el riesgo de que su dominio se extinga si no cumple la condición de pagar lo convenido. Pero ésta es una relación jurídica exclusiva entre el comprador y el vendedor, ya que nadie que no sea el vendedor puede ejercer el derecho de hacer cesar aquel dominio.''

Y en cuanto a que el automóvil hipotecado estaba libre de gravámenes, la afirmación aunque inexacta porque pesaba sobre él aún el de la parte del precio que se debía, se explica por haber asumido el acreedor hipotecario la obligación de pagarla. Si fuera el vendedor condicional el que estuviera reclamando contra Arenas, la cuestión sería de importancia, pero tratándose de un acreedor por sentencia dic-

tada ocho meses después de inscrita la hipoteca en el registro, no la tiene en verdad.

En tal virtud, no habiendo destruído el interventor Miguel Francisco la eficacia en cuanto a él de la hipoteca del demandante Arenas, sólo pudo obtener que se embargara el automóvil hipotecado para ejecutar su sentencia, previa consignación del importe de la obligación hipotecariamente garantizada por el mismo, y como no lo hizo, debió la Corte decretar el *injunction* solicitado. La sección 10 de la Ley No. 19 de 1927, como quedó enmendada por la Ley No. 71 de 1930, Leyes de 1930, p. 449, es como sigue:

"Sección 10.—Ningún deudor hipotecario de propiedad mueble venderá, pignorará y de otro modo dispondrá o gravará propiedad hipotecada por él, o parte alguna de la misma sin el consentimiento por escrito del acreedor hipotecario. Pero tal propiedad podrá ser embargada previa consignación en la secretaría de la corte que entienda en el asunto, del importe de la obligación hipotecariamente garantizada; *Disponiéndose,* que los bienes embargados no podrán ser removidos del municipio en que se encontraren antes de que tal consignación se hubiese efectuado, salvo lo dispuesto en la sección 9 de esta Ley."

*Debe declararse con lugar el recurso y revocarse la sentencia apelada, dictándose otra decretando el injunction solicitado, sin especial condenación de costas.*

EN MOCION DE RECONSIDERACION

Marzo 27, 1935

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

Resuelto el recurso por sentencia de febrero 5, 1935, revocando la apelada, el interventor apelado Miguel Francisco pidió su reconsideración por moción de marzo 5, sobre cuyos méritos se oyó a las partes interesadas en marzo 18 actual.

No se atacan los fundamentos de la opinión que sirvió de base a la sentencia. Se levanta una cuestión de jurisdicción enteramente nueva.

Convenimos con el interventor apelado en que, si tuviera razón, la reconsideración procedería, porque si esta corte no había adquirido jurisdicción, su sentencia sería nula.

Veamos ahora si la razón le asiste al sostener que esta Corte Suprema no adquirió jurisdicción para conocer del recurso.

■ Alega en primer término que la apelación no fué notificada a su codemandado Batalla y en efecto no aparece de los autos que tal notificación se hiciera, pero como de los autos resulta que si bien el pleito se inició contra Batalla, éste no hizo alegación alguna, siendo el interventor Francisco el que suscitó la única contienda que consideró y resolvió la corte sentenciadora, pudiendo concluirse que Batalla no es una verdadera parte contraria interesada en el litigio, su notificación no era necesaria para que esta corte adquiriera jurisdicción de acuerdo con la ley y la jurisprudencia.

■ Y alega en segundo término que tampoco consta que fuera notificado él mismo de la interposición del recurso. De los autos aparece que el escrito de apelación se notificó en tiempo por correo al Lic. Rafael F. Barbosa, Abogado. De la certificación sobre el diligenciado de la notificación no consta expresamente que el sobre depositado en el correo fuera debidamente franqueado ni que Barbosa fuera el abogado del

interventor Francisco, pero sí consta del récord que Barbosa fué el abogado por medio del cual Francisco pidió intervenir y archivó su excepción previa y su contestación y concurrió al juicio en compañía de su otro abogado Defendini. Eso antes del escrito de apelación. Después consta que con Barbosa, como abogado del interventor, se tramitó la preparación de la transcripción que certifica como correcta el otro abogado Defendini, firmando Barbosa con Defendini el alegato del interventor apelado ante esta Corte Suprema y siendo Barbosa el único que compareció a representarlo y defenderlo en el acto de la vista del recurso.

Bajo esas circunstancias, uno y otro defecto quedan curados, pudiendo afirmarse que el escrito fué notificado en tiempo. Si la certificación tuviera que hablar por sí sola, no sería suficiente para concluir que la notificación se había hecho y en tal virtud que la corte había adquirido jurisdicción, pero hablan además de ella, los hechos, supliendo sus deficiencias. Los casos que cita el interventor apelado en el memorándum que presentara en apoyo de su moción de reconsideración, se refieren a situaciones distintas y no son por tanto aplicables.

*No ha lugar a la reconsideración.*