Dolores Araújo Vda. de Jiménez, et als., demandantes y apelados, *v.* Rafael Arenas y Felipe Licha, demandados y apelantes.

Núm. 8192.—*Sometido:* Febrero 13, 1942. *Resuelto:* Abril 21, 1942.

286

*Miguel A. Bustelo* y *Francisco González Fagundo,* abogados de los apelantes; *Arturo Ortiz Toro,* abogado de los apelados.

EL JUEZ ASOCIADO SEÑOR TODD, JR. emitió la opinión del tribunal.

La Corte de Distrito de Humacao declaró con lugar la demanda y dictó sentencia en este caso a favor del demandante José Salgado Jiménez y en contra de los demandados Rafael Arenas y Felipe Licha el día 2 de octubre de 1939. Cada demandado había comparecido durante la tramitación separadamente representado por su abogado. Empero, al apelar de la sentencia para ante esta Corte Suprema ambos demandados lo hicieron en un solo escrito, firmado por sus dos abogados y cancelaron un sello de Rentas Internas de $5. El escrito de apelación fué radicado en la Secretaría de la corte inferior el día 30 de octubre de 1939 y notificado el mismo día al abogado del demandante José Salgado Jiménez, el Lic. Arturo Ortiz Toro.

Perfeccionado el recurso y señalado para vista, el Lic. Arturo Ortiz Toro solicitó su desestimación por dos motivos,

(1) porque sólo se había cancelado un sello de $5, cuando son. dos los demandados apelantes que habían tramitado su caso separadamente, y (2) porque habiendo fallecido el demandante José Salgado Jiménez el día 15 de septiembre de 1939, la notificación que del escrito de apelación se hizo al Lic. Ortiz Toro es nula ya que había cesado su mandato como abogado del demandante desde la fecha de su fallecimiento y que, como consecuencia, esta Corte Suprema carece de jurisdicción para conocer del recurso. Del certificado de defunción de José Salgado Jiménez que obra en autos es un hecho probado que dicho demandante falleció el día 15 de septiembre de 1939. Así mismo resulta que no fué hasta el día 17 de diciembre de 1941, ante esta Corte Suprema y a petición del Lic. Arturo Ortiz Toro, que el demandante José Salgado Jiménez fué sustituído como parte demandante por sus herederos Dolores Araújo viuda de Jiménez y Genoveva Salgado.

Las partes fueron oídas sobre la procedencia de la desestimación solicitada el mismo día en que lo fueron sobre el recurso en su fondo.

■■ En cuanto al primer motivo de desestimación, es cierto que los demandados Arenas y Licha contestaron separadamente y que al apelar lo hicieron en un solo escrito cancelando un sello de rentas internas de $5. Nada encontramos en la ley de enjuiciamiento civil que prohiba a los demandados contra quienes se ha dictado una sentencia condenatoria de carácter solidaria, como lo es la del caso de autos en que se les condenó a pagar $500 al demandante en concepto de daños y perjuicios, con costas y $200 de honorarios de abogado, apelar en un solo escrito de dicha sentencia. Además, en el caso de *Dessús* v. *Ricci*, 27 D.P.R. 750, en el que el apelante interpuso recurso de apelación, en un solo escrito, contra dos resoluciones y adhirió un sello de cinco dólares, al solicitarse la desestimación por dicho motivo, dijimos:

"El apartado *D* de la sección 2ª. de la Ley núm. 17 de 1915 para regular el cobro de los derechos y costas en los asuntos civiles en las

cortes de distrito y municipales dispone lo siguiente: 'Por cada escrito de apelación de una corte de distrito al Tribunal Supremo, $5'.

"Como las palabras de una ley deben ser generalmente entendidas en su más corriente y usual significación; y como lo que exige la ley es que se paguen cinco dólares por cada escrito de apelación, entendemos que la apelante cumplió con ese precepto a pesar de que su escrito contiene *dos* apelaciones pues según la letra de la ley sólo hay que pagar cinco dólares por cada escrito de apelación y no por cada apelación que se establezca en el escrito." (Bastardillas nuestras.)

En dicho caso era más fuerte la posición del apelado pues se apeló de dos resoluciones distintas en un solo escrito, mientras que en el de autos se apela de una sentencia, aunque los apelantes afectados son dos.

■ En cuanto al segundo motivo de desestimación, si bien es cierto que tanto de acuerdo con el artículo 1623 de nuestro Código Civil (ed. 1930), como bajo la ley común el mandato termina con la muerte del mandante, no es menos cierto que deben tenerse presente al resolver la cuestión planteada dos situaciones. Si el Lic. Arturo Ortiz Toro, abogado del demandante José Salgado Jiménez desconocía el fallecimiento de su mandante en la fecha en que se le notificó el escrito de apelación, la aceptación que hizo de dicha notificación es válida de acuerdo con el artículo 1629 del Código Civil (ed. 1930) cuyo primer párrafo dispone que:

"Lo hecho por el mandatario, ignorando la muerte del mandante u otra cualquiera de las causas que hacen cesar el mandato, es válido y surtirá *todos sus efectos* respecto a los terceros que hayan contratado con él de buena fe."

Si aún en el caso de haberse otorgado un contrato por el mandatario que ignora la muerte de su mandante, debe considerarse válido en cuanto a los terceros que hayan contratado con él de buena fe, ¿cómo no ha de ser válida la notificación del escrito de apelación hecha por los aquí demandados, que debemos presumir ignoraban también el fallecimiento del demandante y que por tanto actuaron de buena fe?

Si por el contrario, el Lic. Arturo Ortiz Toro tenía conocimiento del fallecimiento de su cliente en la fecha en que fué notificado del escrito de apelación, y a pesar de saber que su mandato había terminado no puso en conocimiento, tanto de los demandados ·como de la corte ese hecho, podría decirse que actuó de mala fe y su actuación no puede ni debe perjudicar a los demandados apelantes.

Comentando Manresa el artículo 1738 del Código Civil Español, equivalente al 1629 del nuestro, en el volumen XI, páginas 504 a 505 (Cuarta edición, 1931), se expresa así:

"La declaración hecha por el art. 1,738 relativa a la validez de los actos del mandatario, ignorando la muerte del mandante, tiene carácter general y convalida esos mismos actos en caso de revocación, de quiebra y de insolvencia, con relación a los terceros que hayan contratado con él de buena fe. Quiere indicar con esto el Código *que la ignorancia ha de ser común a los terceros y al mandatario, porque si aquéllos supieran la muerte,* la quiebra o insolvencia *del mandante o la revocación del poder, los actos serían nulos ·con relación a aquéllos, porque con razón podría argüírseles su mala fe al contratar con la plena conciencia de que no podía ostentar el mandatario, ya que ellos lo sabían aunque éste lo ignorase, la representación del mandante.*

"La norma establecida por el art. 1,738 constituye, a no dudar, una excepción a los principios generales a tenor de los que el error invalida de derecho el consentimiento, mas hállase justificada, como tantas otras, por los principios de equidad para evitar que el *summun jus* sea la *summa injuria. Es esta validez una verdadera ficción jurídica establecida por la ley para beneficiar al mandatario y a los terceros de buena fe, validez que acaba con el conocimiento por el mandatario o los terceros del fin del mandato. En el caso de que la mala fe radicara en el mandatario y no en los terceros, aquél sería responsable del dolo y podrían éstos ejercitar contra él las correspondientes acciones.*" (Bastardillas nuestras.)

En California, en el caso de *Moyle* v. *Landers,* 20 P. 241, se aplicó la doctrina de *estoppel* contra una parte y su abogado que, teniendo conocimiento del fallecimiento del causante de dicha parte y que había estado representado por el mismo abogado, éste admitió la notificación de un escrito de

apelación un día después de ocurrido dicho fallecimiento y ocultó dicho hecho a la parte contraria hasta después que había expirado el término en que otra notificación pudo haber sido efectuada legalmente. Al denegar una moción de desestimación fundada en la falta de jurisdicción de la Corte Suprema, dicha corte, después de admitir que en un caso corriente en que el apelante no cumple con el estatuto notificando en tiempo al apelado del escrito de apelación surgiría una cuestión jurisdiccional, se expresó así:

·"Pero esta no es la cuestión ante nosotros. La cuestión aquí es si partes que han fraudulentamente impedido la notificación, ocultando hechos materiales, y el no haber hecho objeción a la jurisdicción de la corte a su debido tiempo y con el propósito fraudulento de impedir la debida notificación, han dilatado su objeción hasta tan tarde para que pueda corregirse el defecto, no deban ser ahora impedidas (*estopped*) de atacar la notificación hecha o de poner en controversia la jurisdicción de la corte. Somos de opinión de que de acuerdo con las circunstancias de este caso, a los apelados no debe permitírseles cuestionar la jurisdicción de esta corte por no haberse notificado debidamente el escrito de apelación." (Pág. 245.)

No estamos, sin embargo, resolviendo esta cuestión a base de que se haya actuado de mala fe, pues a falta de prueba en contrario, presumimos la actuación de buena fe de ambas partes y siendo ello así, debemos aplicar el artículo 1629 del Código Civil, supra, y, en su consecuencia resolver que la notificación del escrito de apelación hecha al Lic. Arturo Ortiz Toro, ignorando tanto éste como los apelantes que el demandante José Salgado Jiménez había fallecido, es válida, y que, por lo tanto, no procede la desestimación del recurso.

Pasamos a considerar el mismo en su fondo.

■■ Aunque los apelantes han hecho siete señalamientos de error, consideramos que de prosperar el quinto quedaría resuelto el recurso, pues procedería la revocación de la sentencia. Por dicho señalamiento se dice que la corte inferior erró al resolver que los demandados habían renunciado a la

excepción de cosa juzgada levantada en la contestación a la demanda y alegada como defensa.

El caso resuelto anteriormente en que basan los apelantes su defensa fué un procedimiento de *injunction* seguido por el aquí demandado Rafael Arenas contra Rafael Batalla, Márshal de la Corte Municipal de Caguas y en el cual intervino Miguel Francisco a favor del demandado. Los hechos envueltos en dicho caso fueron los siguientes: Miguel Francisco, para ejecutar una sentencia dictada a su favor por la Corte Municipal de Caguas en un caso de cobro de dinero seguido contra el aquí demandado Felipe Licha, embargó un automóvil Buick, propiedad de Licha, y el márshal anunció su venta en pública subasta. Entonces Rafael Arenas, alegando ser tenedor de un pagaré por $800 suscrito por Licha el 6 de junio de 1932 para garantizar el cual Licha hipotecó el referido automóvil, inscribiéndose la hipoteca en el registro el 14 de julio de 1932, presentó una demanda de injunction contra el referido márshal, aduciendo que Francisco no había consignado el importe de la hipoteca en la corte, y que de verificarse la subasta se causarían daños y pérdidas irreparables al peticionario. Miguel Francisco entonces intervino en el procedimiento de injunction archivando una excepción previa y una contestación, en la que alegó que la hipoteca a favor de Arenas era fraudulenta y por tanto, nula. El márshal demandado nunca compareció, y de hecho el pleito se convirtió en una contienda entre Francisco y Arenas. La corte de distrito declaró sin lugar la demanda, por haber llegado a la conclusión de que la hipoteca era falsa y había sido hecha "con el único fin de burlar los derechos de terceros con créditos legales por ejecutar contra los bienes de Licha". Apelado el caso para ante esta corte, se revocó la sentencia de la corte inferior, y se dictó otra decretando el injunction solicitado, *Arenas* v. *Batalla*, y *Francisco, Int.*, 48 D.P.R. 31, diciéndose por voz del Juez Presidente Sr. del Toro, lo siguiente:

"Sólo nos referiremos a la simulación. Hemos examinado cuidadosamente la prueba practicada y a nuestro juicio no es bastante para concluir que está viciada de fraude la transacción entre Licha y Arenas que evidencia el documento de hipoteca (Se analiza la prueba). También es cierto que el último contrato, el de julio 22, 1932, no aparece cancelado en el Departamento del Interior, pero ello si bien debilita no destruye lo dicho por Arenas con respecto a haber cumplido su compromiso y pagado lo que se debía a virtud de la venta condicional.

"Para que pudiera concluirse que el contrato de hipoteca es fraudulento, se necesita algo más que las dudas que puedan surgir a virtud de las indicadas contradicciones en que basa su conclusión el juez sentenciador."

El mandamiento de injunction, sin embargo, no pudo hacerse efectivo, pues, al denegar la corte de distrito el injunction solicitado, se expidió, a moción de Francisco, nueva orden de ejecución y se llevó a efecto la subasta el 28 de octubre de 1933, siendo adquirido el automóvil embargado por Miguel Francisco por la suma de $300. Después Francisco lo vendió a Pedro Pizá, y éste a José Salgado Jiménez. Finalmente, Rafael Arenas ejecutó en la Corte de Distrito de San Juan la hipoteca sobre dicho automóvil que había sido declarada válida por esta Corte en *Arenas* v. *Batalla*, y *Francisco, Int.*, supra, viéndose más tarde Salgado Jiménez despojado de dicho carro.

Como consecuencia, Salgado trajo la presente acción de nulidad y daños contra Arenas y Licha, alegando que la hipoteca era nula e ineficaz por falta de causa, o sea, repitiendo el argumento de Francisco en el caso de injunction. Contra esta acción es que los demandados alegaron la defensa de cosa juzgada.

La corte inferior al resolver la cuestión planteada, se expresó así:

". . . considerando que, aún cuando los demandados plantearon la defensa de cosa juzgada, tal cual la misma aparece expuesta en sus contestaciones, procedieron, además, a negar la simulación de la referida hipoteca, abriendo de nuevo a examen los mismos hechos

sobre los cuales alegaban la existencia de una sentencia anterior; considerando que durante el trámite del juicio los demandados permitieron que, sin su oposición, se presentase prueba conducente a la demostración de la simulación de la hipoteca de bienes muebles antes indicada, procediendo ellos, al mismo tiempo, a presentar evidencia en oposición a la en tal sentido ofrecida por el demandante; considerando que ello equivalió a una renuncia de la defensa de cosa juzgada, en armonía con la doctrina establecida al tomo 34 C. J., págs. 749–750, en las cuales se dice:

" 'So where a party is guilty of laches in setting up the defense of res judicata, or joins issue on the very questions settled by the judgment, or voluntarily opens an investigation of the matters he might claim to be concluded by it, or makes an admission of record inconsistent with the former judgment, he will be held to have waived the benefit of the estoppel, and the case may be determind as if no such former judgment had been rendered;' "

¿Hubo en este caso la renuncia a que se refiere la corte inferior? Somos de opinión que la pregunta debe ser contestada en la negativa. La cita de Corpus Juris en que se basó la corte inferior no cubre el caso de los demandados. Por el contrario, entre los casos citados en las notas al calce de dicha sección, hay varios que resuelven que un demandado no renuncia a sus derechos bajo una sentencia anterior por el mero hecho de que controvierta también la reclamación del demandante sobre los méritos. Así, por ejemplo, en el de *Harding* v. *Harding,* 148 Cal. 397, 83 P. 434 (1906) se revocaron expresamente los de *Megerle* v. *Ashe,* 33 Cal. 74 y *Hicks* v. *Lovell,* 64 Cal. 14 (y eso no obstante son citados en las notas de Corpus Juris para sostener la sección copiada por la corte inferior) habiéndose expresado la Corte Suprema de California así:

"Ella (la demandada) insistió siempre, sin embargo, en que la sentencia dictada por el Tribunal de Illinois era una defensa absoluta, y presentó en evidencia el récord de los procedimientos seguidos ante la corte de Illinois, descansando en el mismo como una completa defensa, y no hay nada que revele una intención de renunciar al beneficio de la sentencia dictada en Illinois, a menos que se manifieste tal intención por la omisión de la demandada de objetar la

evidencia ofrecida por el demandante en cuanto al domicilio y abandono, por su contrainterrogatorio de los testigos del demandante que declararon sobre el particular y por su presentación de evidencia tendente a desvirtuar la alegación de abandono. Es claro que, bajo las circunstancias, estos hechos no revelaban intención alguna, por parte del demandado, de renunciar al beneficio de la sentencia dictada en Illinois . . . Bajo nuestro sistema, ella tenía derecho a exponer, probar y descansar en todas las defensas que tuviera (Código de Enjuiciamiento Civil, sec. 441; *Banta* v. *Siller*, 121 Cal. 414; *Miles* v. *Woodward,* 115 Cal. 308), y no conocemos ninguna regla de derecho que le exigiera a ella elegir entre sus dos defensas, aunque el demandante le hubiera pedido a la corte que la obligara a hacerlo, cosa que no hizo . . . Pero cualquiera que sea la interpretación que se le dé a *Megerle* v. *Ashe,* 33 Cal. 74, y al caso posterior de *Hicks* v. *Lovell,* 64 Cal. 14, donde se dice algo que podía ser interpretado como una ratificación de la afirmación hecha en el caso anterior, estamos satisfechos de que, bajo nuestro sistema, un demandado no renuncia a sus derechos bajo una sentencia alegada como cosa juzgada, por el mero hecho de oponerse a la reclamación del demandante en sus méritos. No vemos ninguna razón de peso para resolver que tal caso es una excepción a la regla general que rige en este Estado, al efecto de que un demandado puede alegar todas y cada una de las defensas que pueda tener, que asimismo puede probar y descansar en todas sus defensas así alegadas, y que si finalmente se sostiene cualquier defensa así alegada, tiene derecho el demandado a obtener sentencia a su favor. Si hay algo inconsistente con esto en los dos casos de California en que descansa el demandante, deben considerarse revocados.''

Este caso ha sido citado con aprobación, entre otros, en los de *Reclamation Dist. 785* v. *Lovdel Bros. Co.,* 183 P. 598 (1919), y *Hickey* v. *Johnson,* 9 F. (2d) 498 (1925), en el que se dijo por la Corte de Circuito de Apelaciones del Octavo Circuito:

''Creemos que, antes de que una parte pueda decirse terminantemente que ha renunciado a esta defensa, tiene que haber asumido una posición tan inconsistente con su afirmación que equivalga a un abandono, o los procedimientos tienen que haber llegado a tal estado que la concesión de la defensa sería injusta. (Citas).''

Debemos aclarar, además, que la afirmación que hace la corte inferior al efecto de que los demandados presentaron prueba en oposición a la presentada por la demandante sobre la simulación de la hipoteca, no está sostenida por lo que aparece de la transcripción de evidencia elevada a esta corte. Los demandados se limitaron a presentar prueba documental para demostrar su defensa de cosa juzgada. En ningún momento los demandados presentaron prueba de la validez de la hipoteca. No tiene importancia la cuestión pues, como hemos visto, en el caso de *Harding,* supra, el hecho de que un demandado presente prueba para refutar la del demandante no implica que renuncie al beneficio de su defensa de cosa juzgada. El artículo 441 del Código de Enjuiciamiento Civil de California, citado en dicho caso, es equivalente al 114 del nuestro y de acuerdo con el mismo un demandado puede interponer cuantas defensas estén a su alcance en oposición a la demanda. Somos de opinión que la corte inferior erró al resolver que los demandados habían renunciado a su defensa de cosa juzgada, pues si bien el demandado Arenas no la incluyó en su contestación original sí lo hizo en la contestación enmendada y se ha resuelto que aun después de revocada una sentencia y devuelto el caso a la corte inferior un demandado puede enmendar su contestación para incluir dicha defensa. Véase *Hickey* v. *Johnson,* supra.

■ La cuestión fundamental a resolver en este caso es si la sentencia dictada en el caso anterior de *Arenas* v. *Batalla y Francisco, Int.,* 48 D.P.R. 31, constituye o no cosa juzgada en relación con la acción ejercitada en el caso de autos. El artículo 1204 del Código Civil, en lo pertinente, dispone:

"Artículo 1204.— . . . . . .

"Para que la presunción de cosa juzgada surta efecto en otro juicio, es necesario que entre el caso resuelto por la sentencia y aquel en que ésta sea invocada, concurra la más perfecta identidad entre las cosas, las causas, las personas de los litigantes y la calidad con que lo fueron.

" *    *    *    *    *    *    *

"Se entiende que hay identidad de personas siempre que los litigantes del segundo pleito sean causahabientes de los que contendieron en el pleito anterior, o estén unidos a ellos por vínculos de solidaridad o por los que establece la indivisibilidad de las prestaciones entre los que tienen derecho a exigirlas u obligación de satisfacerlas."

En primer término diremos que el demandante José Salgado Jiménez, en relación con el automóvil objeto de la hipoteca de bien mueble, es un sucesor en derecho de Miguel Francisco, pues éste lo vendió a Pizá y éste a Salgado. De manera que en cuanto al demandado Arenas, que fué parte victoriosa en el litigio anterior, y el demandante Salgado existe la identidad de las personas litigantes, pues es regla establecida que la presunción de cosa juzgada obliga, no sólo a las partes originales en el litigio anterior sino también a sus sucesores en derecho y a aquellos que estén unidos a ellos por vínculo de solidaridad. Artículo 1204, supra; 34 C. J. 1009, 1010; *Rodríguez* v. *Castaign,* 7 D.P.R. 370; *González* v. *Méndez,* 15 D.P.R. 701, habiéndose resuelto en este último que aun cuando en el segundo caso se traigan nuevos demandados, si están unidos por vínculo de solidaridad como acreedores hipotecarios debe prevalecer la presunción de cosa juzgada. En este aspecto, el demandado Licha, aunque no fué parte en el litigio anterior, siendo el deudor hipotecario de Arenas está unido a él por el vínculo de solidaridad que determina la ley. Véase al mismo efecto 34 C. J. 975.

El hecho de que la sentencia anterior fué una de esta Corte revocando la dictada por la corte inferior, no altera la situación, pues por dicha sentencia se fué a los méritos, es decir, a la cuestión de nulidad planteada. A este efecto se dice en 34 C. J. 774:

"Cuando la corte apelativa ha revocado por causas que van a los méritos de la cuestión y la revocación demuestra una intención de decidir finalmente el caso sobre los méritos, la sentencia entonces tiene todas las características necesarias para que constituya cosa juzgada."

Tampoco el hecho de que el procedimiento anterior haya sido uno de injunction hace variar la situación legal, pues la presunción de cosa juzgada no depende de la forma u objeto del litigio anterior, sino que se hayan determinado los derechos en controversia por una decisión de carácter final. 34 C. J. 760, Sec. 1173; *Balasquide* v. *Luján,* 45 D.P.R. 563. En estos casos, es decir en el de injunction y en el de autos, las causas también son idénticas pues en ambos la cuestión en controversia es la validez o nulidad de la hipoteca de bien mueble.

Arguye, sin embargo, el apelado, que en todo caso no puede prosperar la defensa de cosa juzgada porque en su tercera causa de acción también atacó la nulidad del procedimiento seguido por Arenas para ejecutar su hipoteca y que esta cuestión no fué objeto de decisión en el caso anterior. No tiene razón, a nuestro juicio.

En el caso de injunction se resolvió expresamente lo siguiente:

"En tal virtud, no habiendo destruído el interventor Miguel Francisco la eficacia en cuanto *a él* de la hipoteca del demandante Arenas, *sólo pudo obtener que se embargara al automóvil hipotecado para ejecutar su sentencia, previa consignación del importe de la obligación hipotecariamente garantizada por el mismo, y como no lo hizo, debió la corte decretar el injunction solicitado.* La sección 10 de la Ley núm. 19 de 1927, como quedó enmendada por la ley núm. 71 de 1930, Leyes de 1930, pág. 449, es como sigue:

" 'Sección 10.—Ningún deudor hipotecario de propiedad mueble venderá, pignorará y de otro modo dispondrá o gravará propiedad hipotecada por él, o parte alguna de la misma sin el consentimiento por escrito del acreedor hipotecario. Pero tal propiedad podrá ser embargada *previa consignación* en la secretaría de la corte que entienda en el asunto, del importe de la obligación hipotecariamente garantizada; Disponiéndose, que los bienes embargados no podrán ser removidos del municipio en que se encontraren antes de que tal consignación se hubiese efectuado, salvo lo dispuesto en la sección 9 de esta Ley.' " (Bastardillas nuestras.)

Si Miguel Francisco, antecesor en título de Salgado, no tenía derecho a embargar el automóvil sin haber consignado el importe de la obligación hipotecaria, cosa que nunca hizo, no adquirió título alguno sobre el automóvil que pudiera válidamente traspasar a Pizá y luego éste a Salgado, y no teniendo dicho título tampoco tiene derecho a que se tomen en consideración los motivos de nulidad alegados por él en relación con la ejecución de la hipoteca. Si fuera el deudor hipotecario el que estuviera reclamando daños y perjuicios contra Arenas, sí tendría derecho a levantar esas cuestiones, pero se trata de un tercero que, al no cumplir con los preceptos mandatorios de la sección 10 de la ley núm. 19 de 1927, supra, ya esta Corte resolvió que no tenía derecho a embargar el bien mueble hipotecado. La adquisición posterior que hizo Miguel Francisco del automóvil, mediante una ejecución llevada a cabo mientras se tramitaba la apelación en el caso de injunction, fué nula *ab initio,* y quedó sin efecto legal alguno al decretarse por esta Corte el injunction solicitado por Arenas.

Somos de opinión que la defensa de cosa juzgada alegada por los demandados debió haber sido declarada con lugar por la corte inferior y que al no hacerlo, cometió el error imputado.

*Debe revocarse la sentencia apelada y dictarse otra declarando sin lugar la demanda, con costas.*

El Juez Asociado Sr. Travieso no intervino.

### EN MOCIÓN DE RECONSIDERACIÓN

#### Mayo 27, 1942

Los demandantes apelados han radicado una extensa moción solicitando reconsideremos la sentencia dictada en este recurso. No creemos necesario entrar a considerar las múltiples cuestiones que plantean pues su alegación principal es que el embargo trabado por Miguel Francisco sobre el automóvil hipotecado por Felipe Licha a favor de Rafael Arenas

no era nulo y que, por lo tanto, José Salgado podía levantar cualquier defensa con respecto a la subasta, especialmente por el hecho de que habiendo sido trasladado el automóvil de Caguas a San Juan por el deudor Licha no inscribió la hipoteca en el Registro de San Juan.

En cuanto a este último punto bastará que digamos que en los casos de *United Porto Rican Bank* v. *Ruiz*, 43 D.P.R. 528 y *United Porto Rican Bank* v. *González*, 46 D.P.R. 781, se resolvió, según aparece del sumario de este último, lo siguiente:

"La inscripción de una hipoteca de bienes muebles en el distrito en que reside el deudor y radican los bienes es una notificación a toda persona—resida o no dentro de dicho distrito—del gravamen constituído sobre la propiedad. Sólo es necesario inscribir nuevamente la hipoteca en el registro del distrito en que se trasladen los bienes cuando dicho traslado se verifica con el consentimiento del acreedor."

Y en el caso de autos si bien el deudor Licha se trajo el automóvil para San Juan no aparece que el acreedor Arenas concediera su consentimiento al traslado. La inscripción de la hipoteca en el Registro de Caguas era una notificación de su existencia tanto para Miguel Francisco como para José Salgado Jiménez.

Con el requisito de la previa consignación del importe de la hipoteca, exigido por el artículo 10 de la Ley de Hipotecas sobre Bienes Muebles (Ley núm. 19 de 1927, pág. 491), según quedó enmendado por la ley núm. 71 de 1930 (pág. 449), la Legislatura no tuvo otro propósito que hacer más clara su intención de que los derechos del acreedor hipotecario debían ser protegidos en forma más eficaz a como lo estaban anteriormente.

En el caso de *United Porto Rican Bank* v. *González*, supra, este tribunal había resuelto que un embargo sobre un ganado hipotecado, trabado antes de regir la ley núm. 71 de 1930, sin sujeción al interés que en el ganado ha adquirido el acreedor hipotecario, no era válido.

La obligación de consignar el importe de la hipoteca impuesta al embargante es mandatoria. Si antes de existir dicho requisito no era válido un embargo hecho sin sujeción al interés del acreedor hipotecario, no puede haber duda de que es nulo también el trabado sin cumplir con tal requisito y tampoco con el mandatorio, impuesto por la enmienda al artículo 10. Además, en este caso no sólo no se cumplió con la previa consignación sino que ésta no se hizo en ningún momento después, si es que podía hacerse, cosa que no resolvemos.

La previa consignación está en armonía con la naturaleza intrínseca de la hipoteca sobre bienes muebles, de acuerdo con la cual el acreedor hipotecario se convierte, hasta cierto punto, en dueño de la propiedad hipotecada. En el mismo caso de *United Porto Rican Bank* v. *González,* supra, se citó al efecto, el siguiente extracto del caso de *Bachrach* v. *Mantel,* 25 J. F. 422, resuelto por la Corte Suprema de Filipinas:

"Según la Ley Hipotecaria de Bienes Muebles, el acreedor hipotecario viene a ser dueño de los bienes en el sentido de que tiene el título legal, quedando al deudor hipotecario el derecho de retener la posesión, a disfrutar de las ventajas que se derivan de su uso y a cancelar el título del acreedor hipotecario por medio del cumplimiento de los términos de la escritura de hipoteca. En cierto sentido, el acreedor hipotecario es en derecho el dueño (*legal owner*), y el deudor hipotecario es el dueño en equidad (*equitable owner*)."

Teniendo Arenas, acreedor hipotecario, el título legal sobre el automóvil, no pudo adquirir Francisco título legal alguno sobre el mismo que pudiera a su vez traspasar a otros, por no haber consignado el importe de la hipoteca.

Y si a lo anteriormente expuesto agregamos el hecho, comprobado ante este tribunal por los documentos unidos a los autos por el abogado de los apelantes, de que tanto José Salgado primero, como su Sucesión después, han sido meras partes nominales sin interés alguno en este caso, ya que, desde antes de fallecer Salgado había obtenido que Mi-

guel Francisco le devolviera el automóvil que remató en la subasta (por cierto por una suma menor del crédito hipotecario) y que dicho abogado admite que su verdadero cliente en este caso siempre ha sido Miguel Francisco, podemos darnos cuenta de que los demandantes nunca han tenido derecho a reclamar unos daños y perjuicios que no han sufrido.

*Debe declararse sin lugar la moción de reconsideración.*